UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF NEW YORK and NEW )<br>YORK STATE BOARD OF ELECTIONS, )<br>)<br>)<br>Defendants. )<br>) | Civil Action No.<br>1:10-cv-1214 (GLS/RFT) |

**MEMORANDUM IN SUPPORT OF UNITED STATES'
MOTION FOR SUPPLEMENTAL AND PERMANENT RELIEF**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................... 1

II. STATUTORY BACKGROUND ........................................................................................ 2

III. FACTS ................................................................................................................................. 4

    A. New York's Failed UOCAVA Compliance Efforts in 2010 ............................................... 4

    B. 2010 Judicial Intervention to Protect New York's UOCAVA Voters................................. 5

    C. Additional Late Mailings Violated UOCAVA and Frustrated the Consent Decree's
       Remedy……………………………………………………………………………………….5

    D. New York Remains Poised to Violate UOCAVA in 2012 .................................................. 6

IV. ARGUMENT....................................................................................................................... 8

    A. New York's Primary Date Must Be Changed..................................................................... 8

       1. New York Cannot Comply with UOCAVA Unless Its Primary Date Is Changed……..9

       2. The Court Has Authority to Order This Relief ................................................................ 10

       3. This Relief Is Necessary and Timely ............................................................................... 13

    B. To Redress the State's Additional UOCAVA Violations, Defendants Should Be Ordered
       to Count All Timely-Requested Ballots That Were Transmitted After October 10, 2010
       and Rejected Solely Because They Were Received Too Late to be Counted .................... 13

       1. New York's Post-Election Reporting Revealed Additional UOCAVA Violations in the
          2010 Election ..................................................................................................................... 13

       2. The Mailing of UOCAVA Ballots After October 10, 2010 Potentially Disenfranchised
          Voters and Frustrated the Court's Remedy...................................................................... 14

       3. Counting Timely-Requested Ballots Mailed After October 10, 2010 Is Appropriate ... 15

       4. Defendants are Best-Positioned to Determine Which Ballots Must be Counted……….16

V. CONCLUSION.................................................................................................................. 17

## I.     INTRODUCTION

The United States respectfully moves this Court for an order granting supplemental and permanent relief.  The United States brought this action on October 12, 2010 to remedy violations of the Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 42 U.S.C. §§ 1973ff to 1973ff-7, as amended by the Military and Overseas Voter Empowerment Act, ("MOVE Act"), Pub. L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009).  This Court entered a Consent Decree on October 19, 2010 to provide immediate but temporary remedies for then-known UOCAVA violations during the November 2010 federal general election.  *See* Consent Decree, Oct. 19, 2010, ECF No. 9, attached as Ex. A [hereinafter "Consent Decree" or "Decree"].  The Decree left open the issue of permanent relief should the Defendants fail to take necessary measures to ensure future UOCAVA compliance.  *Id.* at 11-12.  They have so failed. The Decree also contemplated supplemental relief should additional UOCAVA violations be discovered.  *Id.* ¶ 26.  They have.

Accordingly, the United States seeks two types of relief.  First, it requests an order advancing New York's primary election date, starting with the 2012 election.  Given Defendants' failure to change the date on their own—despite ample time and opportunity to do so—this relief is necessary to ensure future UOCAVA compliance.  New York's federal primary election date is simply too close to the federal general election to ensure UOCAVA compliance in 2012.  In light of the State's inaction, and absent an order from this Court, New York's late primary date will disenfranchise UOCAVA voters in 2012 and beyond.  To comply with UOCAVA, the primary election date must be set for no later than 35 days in advance of the UOCAVA deadline for transmitting ballots (the 45th day before the federal general election), i.e., at least 80 days before the federal general election.

Second, the United States seeks an order for supplemental relief requiring Defendants to count as validly-cast ballots all timely-requested UOCAVA absentee ballots that were transmitted to voters after October 10, 2010 and rejected solely because they were received too late to be counted.  These late transmissions constituted additional UOCAVA violations uncontemplated, and thus unremedied, by the Decree, harmed hundreds of UOCAVA voters, and frustrated the Decree's purpose.

## II. STATUTORY BACKGROUND

UOCAVA guarantees active duty members of the uniformed services (and their spouses and dependents) and United States citizens residing overseas the right "to vote by absentee ballot in general, special, primary, and runoff elections for federal office."  42 U.S.C. § 1973ff-1(a)(1). The MOVE Act reaffirmed Congress's commitment to ensuring that UOCAVA voters have sufficient time to receive, mark, and return their ballots in time to be counted.  *See* Military and Overseas Voter Empowerment (MOVE) Act of 2009, 156 Cong. Rec. S4513, S4518 (daily ed. May 27, 2010).  To give these voters adequate time to vote, the MOVE Act amended UOCAVA to require that states transmit absentee ballots to UOCAVA voters at least 45 days before an election for federal office.  42 U.S.C. § 1973ff-1(a)(8) ("Each state shall . . . transmit a validly requested absentee ballot to an absent uniformed services voter or overseas voter . . . not later than 45 days before the election."); 42 U.S.C. § 1973ff-1(g)(1)(A) ("the purpose [of the 45-day requirement] is to allow absent uniformed services voters and overseas voters enough time to vote"); s*ee* 156 Cong. Rec. at S4518 (discussing development of 45-day advance transmission requirement based upon evidence before Congress).

Under UOCAVA, New York must ensure that validly-requested absentee ballots are sent to UOCAVA voters in accordance with its terms.  42 U.S.C. §§ 1973ff-1, 1973ff-6(6).  The

MOVE Act became effective with the 2010 federal general election; starting with the 2012 election cycle, the MOVE Act will also apply to all primary elections for federal office. 42 U.S.C. § 1973ff-1 note.

States may be exempted from the 45-day advance transmission requirement only if they apply for, and are granted, a hardship waiver from the United States Secretary of Defense. 42 U.S.C. § 1973ff-1(g). To obtain a waiver, a state must show an "undue hardship" due to, among other things, a primary election date that prevents complying with the 45-day advance transmission requirement. 42 U.S.C. § 1973ff-1(g)(2). States seeking a waiver must also establish "a comprehensive plan to ensure that absent uniformed services voters and overseas voters are able to receive absentee ballots which they have requested and submit marked absentee ballots . . . in time to have that ballot counted in the election." 42 U.S.C. § 1973ff-1(g)(1)(D). States must demonstrate that their plan provides "sufficient time to vote as a substitute" for transmitting ballots 45 days in advance of the election. 42 U.S.C. § 1973ff-1(g)(1)(D)(ii); *see* 156 Cong. Rec. at S4518 ("The key is that the State plan must provide adequate substitute procedures so that UOCAVA voters are given an opportunity to vote that is at least as sufficient as if the State complied with the 45-day rule.").

A waiver is only valid for the specific election for federal office for which it is requested. 42 U.S.C. § 1973ff-1(g)(4). Moreover, if a state receives a hardship waiver, the state must transmit UOCAVA ballots in accordance with the comprehensive plan upon which the waiver is based. 42 U.S.C. §§ 1973ff-1(a)(8)(A), 1973ff-1(g).

UOCAVA empowers the Attorney General to enforce its provisions. 42 U.S.C. §1973ff-4(a). A UOCAVA enforcement action may seek both declaratory and injunctive relief to remedy statutory violations. *Id*.

### III. FACTS

#### A. New York's Failed UOCAVA Compliance Efforts in 2010

On April 23, 2010, New York sought a hardship waiver from the Secretary of Defense on the ground that New York's September 14, 2010 primary date made it logistically impossible for the state to comply with UOCAVA's 45-day advance transmission requirement for the November 2010 general election. *See* Letter from Robert A. Brehm, Co-Exec. Dir. of the N.Y. State Bd. of Elections to Robert Carey, Fed. Voting Assistance Program Dir., at 2 (Apr. 23, 2010) ("[T]he statutory scheduling of the primary election . . . prohibits the sending of ballots 45 days before the November 2 General Election."), attached as Ex. B [hereinafter "NY Waiver Application"]. The waiver application noted that State law permitted a ballot receipt extension of 13 days after election day for UOCAVA ballots, N.Y. Elec. Law § 9-209, and it promised that all UOCAVA ballots would be transmitted by October 1, 2010. *See* NY Waiver Application at 6-8. These proposed transmittal and ballot receipt dates would give UOCAVA voters 45 days of round-trip transit time for their ballots.

On August 27, 2010, the Secretary of Defense granted New York a one-time undue hardship waiver. Letter from Lynn C. Simpson, U.S. Office of the Undersecretary of Def., to Robert H. Brehm & Todd D. Valentine, Co-Exec. Dir. of the N.Y. State Bd. of Elections (Aug. 27, 2010) ("this waiver is based on the understanding that the State of New York will transmit absentee ballots . . . no later than October 1, 2010, and that absentee ballots will be accepted up to November 15, 2010 and counted"), attached as Ex. C [hereinafter "NY Hardship Waiver"]. New York's waiver plan provided 17 days after its primary to certify the election results, resolve any election challenges, and finalize, print, and transmit UOCAVA ballots for the general election.

Numerous New York counties, however, failed to transmit all UOCAVA ballots by October 1, 2010. Upon learning of this breach in early October 2010, the United States contacted State officials to gather facts and discuss potential resolutions to the UOCAVA violations caused by those late transmissions.

### B. 2010 Judicial Intervention to Protect New York's UOCAVA Voters

The United States brought this action on October 12, 2010. At that time, Defendants represented that late ballot transmissions occurred in at least 13 counties, but that no county sent UOCAVA ballots after October 10, 2010. The United States relied on these representations, as did this Court in approving the parties' proposed Consent Decree, which extended New York's UOCAVA ballot receipt deadline to November 24, 2010 to ensure that all UOCAVA voters had at least 45 days of roundtrip ballot transit time. *See* Consent Decree ¶¶ 13-25.

### C. Additional Late Mailings Violated UOCAVA and Frustrated the Consent Decree's Remedy

The proposed Consent Decree represented that "at least" 13 counties transmitted ballots after the October 1, 2010 waiver deadline. Consent Decree ¶13. In fact, at least 33 of the State's 62 counties sent UOCAVA ballots after that date. Decl. of Shayna Thompson ¶ 11, Sept. 19, 2011, attached as Ex. D [hereinafter "Thompson Decl."].

Moreover, at least 13 counties transmitted ballots after October 10, 2010, depriving affected voters of the 45 days of ballot transit time the Decree sought to guarantee. In some of those 13 counties, ballots were transmitted as late as October 19, 2010, 12 days before the date by which voters' ballots had to be postmarked in order to be counted, and just 13 days before the election. *See* Thompson Decl. ¶ 12. Defendants' failure to transmit all ballots by October 10

5

resulted in additional UOCAVA violations uncontemplated by the Consent Decree and thus unremedied.

These late ballot transmissions potentially disenfranchised UOCAVA voters. Post-election data indicates that 731 ballots requested before October 1, 2010 were transmitted after October 10, 2010.[1]  *See* Thompson Decl. ¶ 9. Moreover, in a March 14, 2011 report to the United States Department of Defense's Federal Voting Assistance Program,[2] New York reported receiving approximately 1,033 ballots after the extended November 24, 2010 ballot receipt deadline. Thompson Decl. ¶¶ 4-6. Those 1,033 ballots were not counted. Thompson Decl. ¶ 7[3]

### D. New York Remains Poised to Violate UOCAVA in 2012

The Consent Decree required Defendants to seek necessary changes of law or administrative regulation to ensure future UOCAVA compliance. Consent Decree at 11-12. To date, New York has failed to move its federal, non-presidential primary election date, or make any other structural changes to ensure future UOCAVA compliance in general elections.[4] While New York's legislature considered bills to move the primary date during the 2011 legislative session, neither bill passed and neither would prevent UOCAVA violations in 2012.[5]

---

[1] Of those 731 ballots, 671 were mailed and 60 were emailed. Defendants' post-election reports did not provide information to determine the numbers of ballots requested between October 1, 2010 and October 10, 2010.

[2] This report was mandated by the terms of New York's MOVE Act hardship waiver. NY Hardship Waiver, at 6.

[3] Post-election data provided to the United States is not sufficiently specific to determine whether all 1,033 ballots noted in its March 14, 2011 report were timely requested. Nor do they indicate whether the 731 ballots transmitted after October 10 were rejected solely because they were returned too late to be counted. The United States asked New York for more specific data on several occasions but to date New York has not satisfied that request.

[4] New York did modify its special election procedures to comply with the MOVE Act. 2011 N.Y. Sess. Laws Ch. 4 (McKinney). New York also modified its presidential primary election procedures to comply with the MOVE Act. 2011 N.Y. Sess. Laws. Ch. 147 (McKinney).

[5] The Senate bill sought to move the primary date to the fourth Tuesday in August before the general election, leaving the State inadequate time to prepare and transmit its UOCAVA ballots. The Assembly's proposed bill, which sought to move the primary date to late June, was not slated to take effect until 2013, guaranteeing UOCAVA violations in 2012 absent a waiver. *See* A8507, 2011 Assemb., Reg. Sess. (N.Y. 2011), attached as Ex. F; S5848, 2011 Assemb., Reg. Sess. (N.Y. 2011), attached as Ex. G.

And violations appear certain: New York's 2012 federal non-presidential primary election is set for September 11, 2012. N.Y. Elec. Law § 8-100 (establishing "first Tuesday after the second Monday in September before every general election" as the primary election date). UOCAVA's 45-day advance transmission deadline is September 22, 2012, 11 days after the primary election.

Given this reality, New York applied for a hardship waiver for the 2012 election on August 30, 2011. That application is under review by the United States Secretary of Defense and the Attorney General. Accordingly, it would be inappropriate to evaluate its merits here.[6]

Additionally, there appears to be little hope of a legislative remedy. The 2011 legislative session ended June 24, 2011 and the legislature is not scheduled to reconvene before January 2012. *See* N.Y. State Legislative Session Calendar, *available at* http://assembly.state.ny.us/leg/?sh=cal (last visited Sept. 19, 2011), and http://www.nysenate.gov/calendar/session/2011-12 (last visited Sept. 19, 2011). New York's election calendar is complex, and numerous electoral deadlines in the months leading up to the primary election are tied to the State's primary election date.[7] The first of these deadlines occurs nearly four months prior to the primary election date; in the 2010 election cycle this deadline was May 25. *See* N.Y. Elec. Law § 2-120. A number of State law requirements are also tied to the primary election date. NY Waiver Application at 3. In light of this, as the State conceded, "any

---

[6] The United States notes that New York's application appears to seek a hardship waiver based upon the same core problem that existed in 2012 and that the State has failed to resolve: State law remains fundamentally incompatible with UOCAVA.

[7] *See, e.g.*, N.Y. Elec. Law § 2-120 (deadline for filing of party positions to take place no later than two weeks before first day on which designating petitions for a primary election may be signed); N.Y. Elec. Law §§ 6-134, 6-168, 6-120, 6-164 (deadline for filing designating petitions, acceptance, authorization, and administrative and judicial review of objections to designating petitions); N.Y. Elec. Law §§ 6-104, 6-108, 6-158, 6-116 (dates for holding state committee meetings to nominate candidates for statewide office); N.Y. Elec. Law § 6-158 (deadline for holding judicial district conventions); N.Y. Elec. Law §§ 5-210, 5-208 (deadline to register to vote before primary election); N.Y. Elec. Law §§ 8-400, 8-412, 10-106 (deadline for absentee ballot requests); *see also* N.Y. Political Calendar 2010, attached as Ex. H.

7

proposed change to the election calendar during an election year would most certainly impact deadlines that have already passed." *Id.* at 4.

## IV. ARGUMENT

The Consent Decree afforded New York ample opportunity in 2011 to avoid and remedy future UOCAVA violations. The State failed to do so. Moreover, New York's failure to provide accurate and timely information to the United States and this Court as to the full extent of its UOCAVA violations in 2010 had dire consequences: the State's failure to transmit over 700 ballots by October 10 gave some voters as few as 12 days to receive and return them in time for counting. That this occurred without the Court's knowledge deprived those voters of the opportunity to benefit from Court-ordered relief. Accordingly, two types of relief are appropriate. First, to ensure UOCAVA compliance in 2012 and beyond, New York's primary election date must be moved to a date no later than 35 days before UOCAVA's 45-day advance transmission deadline, i.e., at least 80 days before the federal general election. Second, New York must count as validly-cast ballots in the 2010 federal general election all UOCAVA ballots that were timely-requested but transmitted after October 10, 2010 and rejected solely because election officials received them too late to be counted. This relief is necessary to remedy UOCAVA violations flowing from the State's late ballot transmissions and consequent frustration of the Consent Decree's purpose.

### A. New York's Primary Date Must Be Changed

New York's statutorily-set primary election date is an insurmountable barrier to UOCAVA compliance in 2012 and beyond. That late date provides mere days to certify election results, resolve election challenges, and finalize and print ballots before UOCAVA's ballot transmission deadline. As New York's 2010 waiver application detailed, the State simply cannot

complete this process in such a short time period; indeed, the 2010 election established that New York needs at least 35 days prior to the ballot transmission deadline to do this. Given its inability to meet the extended deadlines established by its 2010 UOCAVA hardship waiver, and its failure to resolve this issue in 2011, New York is set to violate UOCAVA again in 2012. Accordingly, this Court must act.

### 1.  New York Cannot Comply with UOCAVA Unless Its Primary Date Is Changed

Unless amended, New York's current election calendar virtually guarantees future UOCAVA violations. Its primary election date falls on the "first Tuesday after the second Monday in September before every general election." N.Y. Elec. Law § 8-100. Although this date will always fall more than 45 days prior to general federal elections, election officials cannot certify primary election results, resolve election challenges, and finalize and print ballots before UOCAVA's advance transmission deadline.

The 2010 federal general election highlighted this problem. The 2010 primary election fell on September 14, 2010, just 49 days prior to the federal general election—and 4 days before UOCAVA's September 18 ballot transmission deadline. And while New York's hardship waiver application avowed that the State would need just 17 days after the primary to certify election results, resolve election challenges, translate ballots pursuant to 42 U.S.C. § 1973aa-1a, and finalize and print all UOCAVA ballots, it in fact needed more than twice that time—35 days—to complete the process.

The State's 2012 primary election calendar presents the same structural impediment to UOCAVA compliance. At present, the State will have just 11 days after its September 11, 2012 primary election to transmit ballots by UOCAVA's September 22 deadline. It is beyond dispute that this cannot be done. Incorporating into New York's election calendar an additional 35-day

9

window before UOCAVA's 45th-day deadline requires a change in state law. Unfortunately, there is no sign the State legislature intends to act. As 2012 quickly approaches, speculation as to another hardship waiver or an imminent legislative remedy is, under the circumstances, a fragile hook upon which to hang the voting rights of the State's military and overseas voters.[8] Accordingly, only an order from this Court requiring a UOCAVA-compliant primary election date will fully protect UOCAVA voters in 2012.

### 2.     The Court Has Authority to Order This Relief

Federal courts have broad equitable authority to enforce consent decrees. *Barcia v. Sitkin*, 367 F.3d 87, 102 (2d Cir. 2004) (citing *Frew v. Hawkins*, 540 U.S. 431, 438-39 (2004)). Moreover, the balance of interests strongly favors an order granting permanent relief.

First, the State's failure to ensure full UOCAVA compliance in 2012 risks irreparable harm to its UOCAVA voters. The right to vote is "fundamental." *Bartlett v. Strickland*, 129 S. Ct. 1231, 1240 (2009); *see Reynolds v. Sims*, 377 U.S. 533, 561 (1964). Denial or abridgement of that right constitutes irreparable harm. *See Montano v. Suffolk Cnty. Legislature*, 268 F. Supp. 2d 243, 260 (E.D.N.Y. 2003) ("An abridgement or dilution of the right to vote constitutes

---

[8] The State's 2012 waiver request comes in the context of its failure to comply with the terms of its 2010 waiver, its inability to gather and provide reliable information to the United States and this Court in the wake of that failure, the consequent harm to UOCAVA voters in 2010, and its failure to change its primary election date and thus eliminate the hardship it now asserts.

irreparable harm.").[9]  An order requiring permanent relief will prevent likely widespread UOCAVA voter disenfranchisement in 2012 and beyond.[10]

Second, the requested relief serves the public interest.  UOCAVA reflects Congress's determination that military and overseas voter participation in federal elections is a vital national interest.  *See Bush v. Hillsborough Cnty. Canvassing Bd.*, 123 F. Supp. 2d 1305, 1307 (N.D. Fla. 2000) ("[Voting is] a sacred element of the democratic process.  For our citizens overseas, voting by absentee ballot may be the only practical means to exercise that right.  For the members of our military, the absentee ballot is a cherished mechanism to voice their political opinion. . . . [It] should be provided no matter what their location.").  The MOVE Act reaffirmed this core determination.  Permanent relief will advance the public interest by ensuring that New York's UOCAVA voters, many of whom are members of the U.S. Armed Forces deployed abroad and in harm's way, can cast votes that count.[11]

Third, the balance of interests favors the requested relief.  To the extent that New York's primary date precludes UOCAVA compliance, New York law must yield.  *See Hillsborough*

---

[9] *Accord Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 882, 907 (9th Cir. 2003) ("Abridgement or dilution of a right so fundamental as the right to vote constitutes irreparable injury." (quotation marks omitted)), *rev'd on other grounds*, 344 F.3d 914 (9th Cir. 2003); *Cardona v. Oakland Unified Sch. Dist.*, 785 F. Supp. 2d 837, 840 (N.D. Cal. 1992) ("Abridgment or dilution of a right so fundamental as the right to vote constitutes irreparable injury."); *Dillard v. Crenshaw Cnty.,* 640 F. Supp. 1347, 1363 (M.D. Ala. 1986) (holding plaintiffs seeking preliminary relief under the Voting Rights Act need not show irreparable harm as "such injury is presumed by law" (citation omitted)); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

[10] The potential scope of any disenfranchisement is significant.  In 2010, there were "60,076 Uniformed Service members, 22,459 family members of voting age, and approximately 238,200 overseas citizens who claim New York as their voting residence."  NY Waiver Application at 6.

[11] Additionally, the public has a clear interest in the enforcement of federal statutes.  *United State v. Diapulse Corp. of Am.*, 457 F.2d 25, 28 (2d Cir. 1972) ("The passage of the statute [by Congress] is . . . an implied finding that violations will harm the public and ought, if necessary, be restrained."); *United States v. Acquest Transit LLC*, No. 09-cv-55S, 2009 WL 2157005, at *1 (W.D.N.Y. July 15, 2009) ("The statute's enactment constitutes Congress's 'implied finding that violations will harm the public and ought, if necessary, be restrained.'" (quoting *Diapulse*, 457 F.2d at 28)), attached as Ex. I; *United States v. Blue Ribbon Smoked Fish, Inc.*, 179 F. Supp. 2d 30, 50 (E.D.N.Y. 2001), *aff'd* 56 Fed. Appx. 542 (2d Cir. 2003); *Free Speech v. Reno*, No. 98-cv-2680, 1999 WL 147743, at *10 (S.D.N.Y. Mar. 18, 1999), *aff'd* 200 F.3d 63 (2d Cir. 1999), attached as Ex. J.

*Cnty. Canvassing Bd.*, 123 F. Supp. 2d at 1314 (noting that any state law that conflicts with UOCAVA is preempted and invalid); *United States v. Cunningham*, No. 08-cv-709, 2009 WL 3350028, at *10 (E.D. Va. Oct. 15, 2009) ("[T]he Commonwealth of Virginia has an obligation under the Supremacy Clause to protect the federally-guaranteed civil right of UOCAVA voters to vote by absentee ballot in federal elections.  To the extent that protecting that right conflicts with Virginia law, Virginia law must give way."), attached as Ex. E.

Furthermore, an order modifying New York's election calendar would not unduly burden the State.  The United States makes this motion over one year before the 2012 federal general election so that, if relief is granted, New York will have enough time to ensure the orderly administration of the 2012 elections.  *See* NY Waiver Application at 2-4 (representing that changes to the election calendar during an election year would constitute a hardship on the state and endanger proper election administration).  The United States does not dispute that instituting an earlier primary date may cause some temporary inconvenience for the State, but that burden is far less significant now, months before the 2012 election cycle begins.

Finally, an order from this Court is the only remedy that will fully protect UOCAVA voters.  Congress enacted the MOVE Act nearly two years ago.  New York concedes its late primary election date prevents UOCAVA compliance; its inability to adhere to the extended deadlines sought in its 2010 hardship waiver reinforces that fact.  Yet, the 2011 legislative session lapsed with the State poised to disenfranchise UOCAVA voters again in 2012.  Under current circumstances, an order from this Court modifying New York's primary date is the only remaining option to guarantee the voting rights of New York's military and overseas voters.

### 3. This Relief Is Necessary and Timely

Time is running out to ensure UOCAVA compliance for 2012. Defendants acknowledge the significant advance planning and preparation required to conduct a state-wide election in New York. New York Waiver Application at 2-4. Major adjustments to the election calendar during an election year could seriously disrupt the State's election administration. *Id*. Because of this, any further delay in the changes necessary to ensure New York's 2012 UOCAVA compliance risks additional and potentially widespread UOCAVA voter disenfranchisement.

### B. To Redress the State's Additional UOCAVA Violations, Defendants Should Be Ordered to Count All Timely-Requested Ballots That Were Transmitted After October 10, 2010 and Rejected Solely Because They Were Received Too Late to be Counted

New York's failure to transmit all UOCAVA ballots by October 10, 2010 violated UOCAVA, potentially disenfranchised UOCAVA voters, and frustrated the purpose of the Consent Decree. Accordingly, Defendants should be compelled to count as validly-cast ballots all timely-requested UOCAVA ballots that were transmitted after October 10, 2010 but rejected solely because they were returned too late to be counted. This narrowly-tailored remedy will restore the rights of those New York voters who, through no fault of their own, were denied their right to vote.

### 1. New York's Post-Election Reporting Revealed Additional UOCAVA Violations in the 2010 Election

Defendants' failure to transmit UOCAVA ballots by October 1, 2010, as provided by the comprehensive plan in New York's 2010 waiver application, violated Section 102(a)(8)(A) of UOCAVA. 42 U.S.C. § 1973ff-l(a)(8)(A); *see* Consent Decree ¶ 22. At the time this suit was filed, New York represented that at least 13 counties transmitted ballots after October 1, 2010 but that *no* county transmitted ballots after October 10, 2010. Consent Decree ¶ 13; *id.* ¶ 5

13

(identifying ballot transmission delays as no later than October 10, 2010). The United States reasonably relied on those representations, as did this Court in fashioning its remedy. Unfortunately, those representations were incorrect. Rather than 13 counties transmitting ballots after October 1, it was in fact *33* (out of 62) counties that failed to meet that deadline. These additional late transmissions constitute further UOCAVA violations.[12]

### 2. The Mailing of UOCAVA Ballots After October 10, 2010 Potentially Disenfranchised Voters and Frustrated the Court's Remedy

Significantly, at least 13 counties transmitted UOCAVA ballots *after* October 10 and as late as October 19, 2010, giving some voters as little as 12 days to receive and return their marked ballots in time for counting. These post-October 10 transmissions violated UOCAVA, potentially disenfranchised voters, and frustrated the Court's remedy.

The Court's remedy sought to guarantee all UOCAVA voters at least 45 days of round-trip ballot transit time, based on the belief that all ballots had been sent by October 10, 2010. The State's failure to transmit all UOCAVA ballots by October 10, 2010 denied affected voters a reasonable opportunity to receive and return their ballots. That at least 13 counties sent UOCAVA ballots after October 10 deprived hundreds of New Yorkers opportunities guaranteed by UOCAVA. Indeed, at least 771 voters who made timely requests for ballots had their ballots sent after October 10. *See supra* note 2 and accompanying text. Those late transmissions not only violated UOCAVA, they frustrated the Consent Decree's purpose, which sought to provide a remedy to all affected voters by providing, to the extent possible, at least 45 days to receive and return their ballots in time for counting.

---

[12] Although not contemplated by the Consent Decree, these additional UOCAVA violations nonetheless were remedied by the Decree, which provided statewide relief as to all ballots sent by October 10.

14

### 3. Counting Timely-Requested Ballots Mailed After October 10, 2010 Is Appropriate

To the extent possible, any disenfranchisement stemming from the State's failure to send all UOCAVA ballots by October 10, 2010 should be remedied. Accordingly, this Court should order the Defendants to count as validly-cast all timely-requested ballots that were sent after October 10, 2010 but rejected solely because they came back too late to be counted.

This relief is well within the Court's equitable discretion to enforce the Consent Decree. First, the Consent Decree anticipated the necessity of supplemental relief should additional UOCAVA violations be discovered. Consent Decree ¶ 26 ("The parties reserve the right … to seek additional supplemental relief, if information regarding additional UOCAVA violations is discovered."); *id.* at 12 (anticipating possibility of additional relief "necessary for the effectuation of the terms of this Consent Decree and to ensure compliance with Section 102(a)(8)(A) of UOCAVA"). The evidence of additional UOCAVA violations is serious, undisputed, and calls for immediate relief.

Second, it is well-settled that "[a] court has an affirmative duty to protect the integrity of its decree." *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) (citation and quotation marks omitted). That duty arises where, as here, "the performance of one party threatens to frustrate the purpose of the decree." *Id.*; *see Barcia*, 367 F.3d at 102. Moreover, "[e]nsuring compliance with a prior order is an equitable goal which a court is empowered to pursue even absent a finding of contempt." *Berger*, 771 F.2d at 1569. The Court has broad discretion to institute an equitable remedy that accounts for "what is necessary, what is fair, and what is workable." *Id.* (quoting *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973)).

Here, counting to the extent possible the ballots sent after October 10 is necessary, fair, and workable. Moreover, it has also been ordered before. In *United States v. Cunningham*, No.

08-cv-709, 2009 WL 3350028 (E.D.Va. Oct. 15, 2009), attached as Ex. E, the Eastern District of Virginia imposed this exact remedy to redress UOCAVA harms.  In *Cunningham*, officials sent UOCAVA ballots too close to the 2008 federal general election for ballots to be returned in time to be counted.  2009 WL 3350028, at *9.  The court rejected the Commonwealth's contention that any harm was moot because it could not be redressed after the election had been certified, holding that "[s]uch an injury is clearly redressable by counting as validly-cast those timely-requested absentee ballots that were rejected solely because they were received after the close of the polls on election day through no fault of the voter." *Id*. at *10.

Here, as in *Cunningham*, a state violated UOCAVA by sending ballots late.  Resurrecting any extinguished votes caused by those late transmissions fall within the broad equitable power of this Court, and such an order is necessary to vindicate the rights of those New Yorkers harmed through no fault of their own.

### 4.    Defendants are Best-Positioned to Determine Which Ballots Must be Counted

The post-election data that Defendants provided to the United States are insufficiently detailed to determine the precise scope of harm flowing from Defendants' post-October 10 transmissions.  Because the information necessary to make that determination is solely within Defendants' possession or control, Defendants can best determine which voters have been harmed and thus which ballots should be counted.  Accordingly, the United States respectfully requests that the Court require Defendants to determine which UOCAVA voters 1) made proper and timely requests for UOCAVA ballots on or before October 10, 2010, 2) had their ballots transmitted after October 10, 2010, and 3) whose ballots were rejected solely because they were received after November 24, 2010.  In addition, to remedy harm imposed on those voters, this Court should order the Defendants to take all steps necessary to count those ballots as validly-

cast and recertify the results of the 2010 federal elections. *See Cunningham*, 2009 WL 3350028, at *9-10.

## V. CONCLUSION

For the reasons given above, the United States respectfully requests an order that (1) moves New York's primary election to a date no later than 35 days prior to UOCAVA's 45-day ballot transmission deadline (i.e., at least 80 days before the federal general election), beginning in 2012 and (2) orders New York to count all timely-requested and otherwise valid UOCAVA ballots that were transmitted to voters after October 10, 2010, but received by election officials after November 24, 2010.

Respectfully submitted,

Date: September 19, 2011

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

BARBARA COTTRELL- 101411
Assistant United States Attorney
Northern District of New York
445 Broadway, Room 218
Albany, NY 12207-2924
Telephone:	(518) 431-0247
Facsimile:	(518) 431-0249

*/s/ Richard Dellheim*
T. CHRISTIAN HERREN JR.
REBECCA WERTZ
RICHARD DELLHEIM
ERNEST MCFARLAND
RISA BERKOWER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone:	(202) 307-6552
Facsimile:	(202) 307-3961