UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                      *Plaintiff*,          10-CV-1214

        -against-                    (GLS)(RFT)

STATE OF NEW YORK and THE NEW
YORK STATE BOARD OF ELECTIONS,

                      *Defendants*.

## THE STATE OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUPPLEMENTAL AND PERMANENT RELIEF

                                          ERIC T. SCHNEIDERMAN
                                          Attorney General of the State of New York
                                          Attorney for Defendant State of New York

Jeffrey M. Dvorin
Bruce J. Boivin
Michael McCartin
Justin C. Levin
Assistant Attorneys General, of Counsel
Bar Roll No.
Telephone: (518) 473-7614
Fax: (518) 473-1572 (Not for service of papers)        Date: October 31, 2011

## Table of Contents

Preliminary Statement .................................................................................................. 2

ARGUMENT .................................................................................................................. 3

    POINT I

        This action is not ripe because the DOD has not yet decided New
        York's 42 U.S.C. § 1973ff-1(g) waiver application ............................................ 3

    POINT II

        The Court should likewise hold this matter in abeyance under the
        primary jurisdiction doctrine. ............................................................................. 7

    POINT III

        The Court should afford the State a reasonable period of time to
        establish a new primary election date that complies with
        UOCAVA. ......................................................................................................... 11

Conclusion ..................................................................................................................... 15

## Preliminary Statement

The United States seeks New York State's compliance with the federal Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA") – a goal that all parties agree must be met. The instant motion, however, is both unripe for the Court's consideration and would, if granted in the form contained in the United States' proposed order, unnecessarily and improperly intrude on the prerogative of the Legislature and Governor to determine the new UOCAVA-compliant primary date. Accordingly, the State of New York respectfully requests that the Court (a) await the outcome of the State's pending federal application for a waiver for the 2012 election cycle and (b), if a waiver is denied, allow the Legislature and the Governor an opportunity to designate a new federal primary date by February 2012.

In its motion, the United States asks this Court to issue an order directing New York to set its primary date no later than 35 days in advance of the 45 day deadline for transmitting UOCAVA ballots for the 2012 general election (i.e., no later than August 18, 2012). The United States seeks such relief even though, as acknowledged in its moving papers, New York has filed a timely application for a waiver of the 45-day transmission requirement for the 2012 primary and general elections. As of this date, the waiver application -- made to the Department of Defense pursuant to 42 U.S.C. § 1973ff-1(g) -- remains pending. See Response of State Board of Elections to Plaintiff's Motion for Supplemental and Permanent Relief (Dkt. No. 27).

This Court should refrain from ruling on an issue under consideration by the federal agency charged with administering UOCAVA. It is undisputed that the Department of Defense ("DOD")'s approval of the waiver application would render the United States'

1

requested relief moot. The United States' motion is therefore not ripe for judicial review with respect to the 2012 primary date. Moreover, under the primary jurisdiction doctrine, the Court should withhold any action to avoid the possibility of conflicting agency-judicial determinations, and allow the DOD's statutorily prescribed waiver process to proceed without preemptive action by this Court.

To be clear, should the waiver application be denied, the State does not dispute that, at least for federal elections, the 2012 primary must be held at least 80 days before the 2012 general election. The State further agrees that it needs to act expeditiously to change its September primary date for federal elections to insure compliance with UOCAVA in 2012.

The United States, however, seeks additional relief that goes beyond that required to guarantee compliance with federal law, and has the deleterious consequences of improperly infringing on the State's prerogative to set its own UOCAVA-compliant primary date. Specifically, the federal government asks the court to direct that the State, "propose . . . a federal non-presidential primary election date, and any other election calendar adjustments necessary to conduct the election on that date, to the Court, in writing, *within ten (10) days of this order* for consideration by the Court." Proposed remedial order, decretal para., sub-para. (3) (Dkt. No. 16-13) (emphasis added).

As explained below, it is entirely unreasonable to compel the relevant State actors to arrive at a new primary date and new election schedule within 10 days. No statutory changes can be finalized until the Legislature acts. The Legislature next convenes in January 2012, unless an extraordinary session is declared. Moreover, the United States does not – and could not – articulate any reason to place such an extreme time constraint on the State; the election calendar demonstrates that setting of the new primary date does not need to occur

until at least February 2012 and possibly later. In short, obtaining compliance with UOCAVA and allowing the Legislature and the Governor to exercise their prerogative to set a new primary date need not be inconsistent goals, notwithstanding the United States' proposed order.

The United States also seeks relief in connection with the counting of ballots for the 2010 general federal election, including an order directing New York to count all properly cast UOCAVA ballots that were not counted solely because they were received after the deadline. The State does not oppose this relief and refers the Court to the response to Plaintiff's motion filed by the State Board of Elections with respect to the factual allegations made by the United States regarding the 2010 election.

## ARGUMENT

### POINT I

**This action is not ripe because the DOD has not yet decided New York's 42 U.S.C. § 1973ff-1(g) waiver application.**

The United States dismissively suggests that "speculation as to another hardship waiver . . . is, under the circumstances a "fragile hook" for opposing the relief that it seeks.". Plaintiff's Memorandum of Law, p. 10. That allegedly "fragile hook" is, in reality, a jurisdictional bar to court intervention at this time.

The ripeness doctrine under Article III precludes the resolution of a legal challenge "in the absence of [a] 'direct and immediate dilemma.'" United States v. Johnson, 446 F.3d 272, 278 (2d Cir. 2006) (quoting Marchi v. Bd. of Coop. Educ. Servs., 173 F.3d 469, 478 (2d Cir.1999)). Because ripeness is "a jurisdictional inquiry," Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005), the Court "must presume that [it] cannot

3

entertain [plaintiff's] claims 'unless the contrary appears affirmatively from the record.'" Id. (quoting Renne v. Geary, 501 U.S. 312, 316 (1991) (internal quotation marks omitted)).

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agric. Prod. Co., 473 U.S. 568, 580-81 (1985)) (internal quotation marks and citations omitted). See also Coffran v. Board of Trustees of New York City Pension Fund, 46 F.3d 3, 4 (2d Cir. 1995). Even so, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. at 581 (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 143 (1974)) (internal quotation marks omitted).

When it comes to litigation that is contingent on a federal agency's exercise of discretion afforded to it by Congress, courts shall not decide the issue until after the agency has weighed in with its own judgment. The "basic rationale" for this "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967). In the context of the exhaustion doctrine, which the Supreme Court has recognized is closely related to the ripeness doctrine as both govern "the timing of federal-court decisionmaking," the high court has said that "agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer" especially "when the action under review involves exercise of the agency's discretionary

4

power or when the agency proceedings in question allow the agency to apply its special expertise." McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992).

Furthermore, a case may still not be fit for review even when it is comprised of clear legal issues:

> [T]he question of fitness does not pivot solely on whether a court is capable of resolving a claim intelligently, but also involves an assessment of whether it is appropriate for the court to undertake the task. Federal courts cannot -- and should not -- spend their scarce resources on what amounts to shadow boxing. Thus, if a plaintiff's claim, though predominantly legal in character, depends on future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe.

McInnis-Misenor v. Maine Medical Center, 319 F.3d 63, 72 (1st Cir. 2003) (quoting Ernst & Young v. Depositors Economic Protection Corp., 45 F.3d 530, 537 (1st Cir. 1995).

Stated differently, "'premature review not only can involve judges in deciding issues in a context not sufficiently concrete to allow for focus and intelligent analysis, but it also can involve them in deciding issues unnecessarily, wasting time and effort.'" W.R. Grace & Co. v. United States EPA, 959 F.2d 360, 366 (1st Cir.1992) (quoting Roosevelt Campobello Int'l Park Comm'n v. EPA, 684 F.2d1034, 1040 (1st Cir. 1982)).

In considering ripeness, the Court must "'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" Texas v. United States, 523 U.S. at 300 (quoting Abbott Laboratories, 387 U.S. at 149. But in each case, it is the plaintiff's burden to prove that "the facts alleged, *under all the circumstances*, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to justify judicial resolution." Marchi v. Bd. of Coop. Educ. Servs., 173 F.3d at 478 (quotation marks and citation omitted) (emphasis added).

5

In the instant case, in 2009, Congress amended UOCAVA by enacting the MOVE Act, and, in doing so, explicitly authorized "the Presidential designee" -- here the DOD -- to approve a state's waiver application, as long as the state met certain statutory requirements under 42 U.S.C. § 1973ff-1(g)(2). Pursuant to that statute, New York timely submitted a waiver application to the DOD on or about August 30, 2011.[1] If that application is granted, it will render moot the legal issues relating to the federal primary elections for 2012 and the United States' instant motion on those issues.

Judicial resolution of the United States' motion regarding the 2012 primary election is premature until the DOD decides whether to approve New York's pending waiver application because courts generally do not entertain a case when "further agency action might render the case moot and judicial review completely unnecessary." Sierra Club v. U.S. Nuclear Regulatory Com'n, 825 F.2d 1356, 1362 (9th Cir. 1987); see also Branch v. Smith, 538 U.S. 254, 283 (2003) (Kennedy, J., concurring) (noting that constitutional challenge to state redistricting plan was premature where Department of Justice had not yet precleared the plan in accordance with § 5 of the Voting Rights Act of 1965). Indeed, because courts ensure that "judicial review involves concrete disputes over meaningful interests, rather than abstract disputes over hypothetical governmental actions," National Wildlife Federation v. Goldschmidt, 677 F.2d 259, 263 (2d Cir. 1982), and because "[c]ourts have no business adjudicating the legality of non-events," id., the Court should refrain from resolving the

---

[1] New York's application complies with the statutory requirements of 42 U.S.C. § 1973ff-1(g) in that: (1) New York has submitted "a comprehensive plan" which provides that military personnel will be given "sufficient time to receive absentee ballots they have requested and submit marked absentee ballots to the appropriate State election official in time to have that ballot counted in the election for Federal office," and (2) New York has established that it would suffer "an undue hardship" if it had to comply with UOCAVA in 2012 because of the circumstances surrounding New York's primary election date. 42 U.S.C. § 1973ff-1(g)(2).

6

United States' motion until the DOD rules on New York's 42 U.S.C. § 1973ff-1(g) waiver application -- a ruling that may obviate the need for judicial intervention.

## POINT II

### The Court should likewise hold this matter in abeyance under the primary jurisdiction doctrine.

In addition to refraining from considering the United States' motion because it is not ripe, the Court should further hold this matter in abeyance in accordance with the primary jurisdiction doctrine. Application of the primary jurisdiction doctrine "does not speak to the jurisdictional power of the federal courts," but rather "structures the proceedings as a matter of judicial discretion, so as to engender an orderly and sensible coordination of the work of agencies and courts." United States v. Bessemer & L.E.R. Co., 717 F.2d 593, 599 (D.C.Cir. 1983) (internal citation and quotation marks omitted). Under this doctrine "the courts have jurisdiction over the subject matter of the action," but the court must resolve "whether they should exercise their jurisdiction initially or require 'prior resort' to the appropriate agency." Ellis v. Tribune Television Co., 443 F.3d 71, 81, n.12 (2d Cir. 2006) (internal citation and quotation marks omitted). "Whether the doctrine of primary jurisdiction applies in any particular situation depends on the extent to which Congress, in enacting a regulatory scheme, intends an administrative body to have the first word on issues arising in juridical proceedings." U.S. v. Culliton, 328 F.3d 1074, 1082 (9th Cir. 2003) (omitting internal quotation) (citing United States v. RCA, 358 U.S. 334 (1959)).

"The threshold issue in determining whether this doctrine applies is whether both the court and an agency have jurisdiction over the same issue." Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 59 (2d Cir. 1994) (citing Ricci v. Chicago Mercantile Exch.,

7

409 U.S. 289, 304 (1973)). "The aim of the doctrine . . . is to ensure that courts and agencies with concurrent jurisdiction over a matter do not work at cross-purposes." Fulton Cogeneration Associates v. Niagara Mohawk Power Corp., 84 F.3d 91, 97 (2d Cir.1996) (citing Gen. Elec. Co. v. M.V. Nedlloyd, 817 F.2d 1022, 1026 (2d Cir.1987)). "Whether there should be judicial forbearance hinges therefore on the authority Congress delegated to the agency in the legislative scheme." Golden Hill, 39 F.3d at 59 (2d Cir.1994) (citing Ricci v. Chicago Mercantile Exch., 409 U.S. at 304). Thus, even if the Court were to determine it has jurisdiction, it should not act while the waiver application remains pending.

In Ellis v. Tribune Television Co., supra, the Second Circuit conducted an in-depth analysis of the primary jurisdiction doctrine. There, the Court held that the district court should have invoked the doctrine and allowed the Federal Communications Commission ("FCC") to address in the first instance whether Tribune Television Company should receive an extension of the waiver application that it had pending before the FCC. 443 F.3d at 80.

In Ellis, the Second Circuit identified four factors as the "focus of the analysis" in determining whether this doctrine warrants a stay of proceedings:

(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

(2) whether the question at issue is particularly within the agency's discretion;

(3) whether there exists a substantial danger of inconsistent rulings; and

(4) whether a prior application to the agency has been made.

8

443 F.3d at 82-83 (citing Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. and Tel. Co., 46 F.3d 220, 222 (2d Cir.1995). In the instant case, these four factors militate against judicial intervention while the waiver application is pending.

The first factor favors invoking the primary jurisdiction doctrine since New York's waiver application does not involve matters "within the conventional experience of judges," rather it involves "technical or policy considerations within [DOD's] particular field of expertise." Ellis, 443 F.3d at 82-83. This is so because the specialized DOD unit statutorily charged with administering UOCAVA (the Federal Voting Assistance Program) is best positioned to assess the reasonableness of New York's application and its voting plan. See id., 443 F.3d at 84 (stating that the Supreme Court has emphasized that "'reasonableness' determinations . . . require administrative -- rather than judicial -- review under the primary jurisdiction doctrine"). Likewise, the second factor favors judicial restraint because Congress explicitly placed authority to rule on a state's waiver application with the Presidential designee, the DOD. 42 U.S.C. § 1973ff-1(g)(2); see Ellis, 443 F.3d at 85-86 ("The question at issue in both Tribune's permanent waiver request and the 2005 Order -- namely, whether Tribune should receive an extension of the waiver . . . -- is particularly within the agency's discretion."). The third factor also favors delay of a judicial determination because if the Court were to enter a judgment against New York, and then the DOD were to grant New York's timely waiver application, there would be inconsistent rulings. See id., 443 F.3d at 87 ("Because Tribune's application for an extended waiver was still pending before the Commission at the time of the district court's decision, there existed a 'substantial danger of inconsistent rulings.'"). The final factor similarly argues against judicial intervention at this time: the State has made a timely and proper waiver application

9

to the DOD. See id., 443 F.3d at 89 ("[i]f prior application to the agency is present, this factor provides support for the conclusion that the doctrine of primary jurisdiction is appropriate")(citations omitted).

In addition to these four factors, when the Ellis court considered the issues of undue delay and judicial economy, it explained:

> [I]n analyzing the potential advantages of applying the doctrine against the potential costs, we recognize that, because primary jurisdiction is a mechanism for streamlining judicial review, courts (including this Court) have sometimes refused to recognize a primary jurisdiction claim where agency referral would result in undue delay. However, more recently, we have noted that such considerations of judicial economy should not be considered because the Supreme Court has consistently held that there are only two purposes to consider in determining whether to apply the primary jurisdiction doctrine -- uniformity and expertise and the Supreme Court has never identified judicial economy as a relevant factor.

443 F.3d at 90 (quotations and citations omitted). Allowing time for the DOD to resolve the issue of New York's 42 U.S.C. § 1973ff-1(g) waiver application will insure that all such waiver applications submitted to the DOD are uniformly addressed by the entity authorized by Congress to do so. Because the DOD can best assess whether New York's plan to ensure military-voter participation in the electoral process is achievable, it is well-equipped to render a decision at this time.

Finally, the Second Circuit has emphasized that "[a] federal agency and a district court are not like two trains, wholly unrelated to one another, racing down parallel tracks towards the same end. . . . [Rather] it is desirable that the agency and the court go down the same track -- although at different times -- to attain the statute's ends by their coordinate action." Golden Hill, 39 F.3d at 59. Holding in abeyance any judicial action would allow the DOD to go down the track first, just as Congress envisioned when it specifically allowed

for 42 U.S.C. § 1973ff-1(g) waiver applications. Consequently, application of the primary jurisdiction doctrine is appropriate here.

## POINT III

**The Court should afford the State a reasonable period of time to establish a new primary election date that complies with UOCAVA.**

For the reasons set forth in Points I and II, the Court should refrain from granting the relief sought by the United States with respect to changing the 2012 federal primary date. Should the Court, nonetheless, deem it necessary to reach that issue, it should reject the unrealistically short deadline proposed by the United States. Such a deadline is entirely unnecessary to insure the State's UOCAVA compliance, and would improperly interfere with the State's well-established broad powers under the Elections Clause.

Clause 1 of Section 4 of Article I of the United States Constitution (the Elections Clause) grants states the power to prescribe "The Times, Places and Manner of holding Elections for Senators and Representatives." The Elections Clause is an "express delegation [] of power to the States to act with respect to federal elections." U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 805 (1995).

Pursuant to the Elections Clause and other provisions of the Constitution, "the states . . . in fact exercise a wide discretion in the formulation of a system for the choice by the people of representatives in Congress." United States v. Classic, 313 U.S. 299, 311 (1941). Accordingly, "the states are authorized by the Constitution[] to legislate on" the right to vote for representatives in Congress "to the extent that Congress has not restricted state action by the exercise of its powers to regulate elections under § 4 and its more general power under

11

Article I, § 8." Id. at 315; see also U.S. Term Limits, Inc., 514 U.S. at 805 (quoting Classic, 313 U.S. at 315); Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 217 (1986).

Ignoring the State Legislature and the Governor's prerogative to set federal election dates and procedures, the United States requests that the Court order the State to "propose such a federal non-presidential primary election date, and any other election calendar adjustments necessary to conduct the election on that date, to the Court, in writing, *within ten (10) days of this Order for consideration by the Court*." Plaintiff's Proposed Order, decretal para, sub-para. (2) and related sub-para. (5) (Dkt. No. 16-13) (emphasis added). Plaintiff's request for a proposed new primary date within 10 days should be rejected because it is both unnecessary and improper. Indeed, the United States offers no substantive support for this expedited timeframe.

A 10-day deadline would improperly preclude the Legislature and the Governor from exercising their Constitutional prerogative to select a new federal primary date. As the United States acknowledges, New York's "2011 legislative session ended June 24, 2011 and the legislature is not scheduled to reconvene before January 2012." Plaintiff's Memorandum in Support, p. 7. No action could be taken by the Legislature until its members return to consider statutory changes such as those required to move a primary election and all of the ancillary deadlines in the election calendar that precede it.

Nor is such an arbitrary deadline necessary to ensure compliance with federal law. Even if a new primary date were moved three months earlier to June, the first date on which any statutory action to administer that election would be February 13, 2012 *at the earliest*.[2] If the Legislature instead chose an August primary date, the first date for such actions would

---

[2] That is the date when required "party calls" would need to be issued pursuant to New York Election Law § 2-120 (1) if the existing election calendar were shifted from September to late June.

12

be early April 2012. In other words, a new primary election date could be established by statute as late as early February.[3] The Court can require the State's compliance with UOCAVA without depriving the Legislature of its Constitutional prerogative to determine a new federal primary date by statute in January.

Such deference to the Legislature on this aspect of UOCAVA compliance accords with other courts' approach when faced with the same objective. See, e.g., Bush v. Hillsborough County Canvassing Bd., 123 F.Supp.2d 1305, 1317 (N.D. Fla. 2000) (requiring compliance with UOCAVA but declining to "legislate the intricacies of state election procedure" in its remedial order). Affording the Legislature the opportunity to set a new federal primary date is particularly appropriate where, as here, the State fully acknowledges the need to move that primary date to comply with UOCAVA if a waiver is not granted by the DOD. *See id.*

In sum, an order from this Court that simply requires New York to move its federal primary elections to an appropriate date no later than 35 days prior to the 45-day deadline for transmitting UOCAVA ballots would assure that New York's primary date complies fully with UOCAVA. Under such an order, New York should be afforded a reasonable amount of time to set a new federal primary election date and address the extensive changes to other election deadlines that must be made *in tandem* with that change. As plaintiff concedes, "New York's election calendar is complex, and numerous electoral deadlines in the months leading up to the primary election are tied to the State's primary election date." Plaintiff's

---

[3] The United States cites the State's waiver application to suggest that the change in primary date must be made this year before the Legislature returns to session. See Memorandum of Law in Support of Plaintiff's Motion for Supplemental and Permanent Relief. pp. 12-13. But the United States conflates the many difficulties faced by the State in administering any primary date that is earlier than September in 2012 – the thrust of the State's waiver application – with the separate challenges that would arise from waiting until 2012 to select that new primary date.

13

Memorandum in Support of Motion for Supplemental and Permanent Relief, p. 7. An ill-advised primary election date that does not address -- as a statute negotiated by the Legislature and Governor would -- the complex ancillary deadlines and procedural tasks that must be adjusted along with the primary date could harm New Yorkers' voting rights in numerous unintended but significant ways.

Accordingly, if the State's waiver application is denied and the Court orders that a new federal primary date for 2012 must be established by the State, the Court could set a status conference or otherwise set a control date in early February. If the Legislature fails to reach agreement on the necessary changes when it returns, then the Court would still be able to take necessary action at that time to ensure compliance with federal law should it determine to do so.

## Conclusion

The Court should refrain from granting any relief with respect to the 2012 federal primary date until the Department of Defense rules on New York's waiver application. Even were the Court to deem judicial intervention appropriate at this time, it should reject the United States' request to impose an arbitrary and unreasonable deadline for setting a new primary date and afford New York a reasonable period of time in which to reschedule its 2012 federal primary.

        ERIC T. SCHNEIDERMAN
        Attorney General of the State of New York
        Attorney for Defendant New York State
        The Capitol
        Albany, New York 12224-0341

By: *s/ Jeffrey Dvorin*
Jeffrey Dvorin
Assistant Attorney General, of Counsel
Bar Roll No. 101559
Telephone: (518) 473-7614

Bruce J. Boivin
Assistant Attorney General, of Counsel
Bar Roll No. 507894
Telephone: (518) 473-5093
Email: Bruce.Boivin@ag.ny.gov

TO: **Richard Dellheim**
    **Risa A. Berkower**
    Voting Section
    Civil Rights Division
    U.S. Department of Justice
    950 Pennsylvania Ave, N.W.
    Washington, DC 20530

    **Barbara D. Cottrell**
    **Thomas Spina , Jr.**
    Office of United States Attorney - Albany
    445 Broadway ; 218 U.S. Courthouse
    Albany, NY 12207-2924

**Paul Collins, Esq.**
**Kimberly Galvin, Esq,**
New York State Board of Elections
Office of Special Counsel
40 Stuben Street
Albany, NY  12207

**David L. Lewis**
Lewis, Fiore Law Firm
Attorneys for NYS Senate (Intervenor)
225 Broadway , Suite 3300
New York, NY 10007-3001