UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,              )<br>                                                              )<br>                        Plaintiff,           )<br>                                                              )<br>              v.                                           )<br>                                                              )<br>STATE OF NEW YORK and NEW      )<br>YORK STATE BOARD OF ELECTIONS, )<br>                                                              )<br>                                                              )<br>                        Defendants.      )<br>                                                              )<br>_____ ) | Case No. 1:10-CV-1214 (GLS/RFT) |

**REPLY MEMORANDUM IN SUPPORT OF UNITED STATES'
MOTION FOR SUPPLEMENTAL AND PERMANENT RELIEF**

**TABLE OF CONTENTS**

I. ARGUMENT…………………………………………………………….......…1

    A.  The Court Should Order New York's 2012 Federal Primary Election to Be Held At Least 80 Days Prior to the Federal General Election………………......1

    B.  Defendants' Conflicting Post-Election Data Jeopardize Complete Relief for Affected Voters …………………………………………….....…………..…..5

II. CONCLUSION…………………………………………………………....…........8

Plaintiff United States of America ("United States") respectfully submits this Reply Memorandum in support of its Motion for Supplemental and Permanent Relief.  The United States' motion should be granted.  First, the jurisdictional grounds asserted by New York to justify delaying the Court's resolution of this motion no longer exist.  *See* United States' Notice and Exs. A and B thereto, Nov. 16, 2011, ECF Nos. 39, 39-1, and 39-2.  Moreover, Defendants explicitly concede that (1) New York's 2012 federal primary election must be at least 80 days prior to the general election to ensure compliance with the Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 42 U.S.C. §§ 1973ff to 1973ff-7[1], and that (2) it is appropriate for this Court to order the State to count all timely-requested, properly-cast UOCAVA ballots from the 2010 federal general election that were not counted solely because they were received after the receipt deadline.  Finally, because serious questions exist as to the accuracy and completeness of Defendants' data as to the number of affected ballots, the United States respectfully requests that the Court also order Defendants to re-survey all New York county boards of elections to obtain complete and accurate data indentifying which 2010 ballots must be counted.

I.   **ARGUMENT**

   A.   **The Court Should Order New York's 2012 Federal Primary Election to Be Held At Least 80 Days Prior to the Federal General Election**

New York concedes that its federal primary election must be held at least 80 days prior to the federal general election to ensure UOCAVA compliance.[2]  State of N.Y. Mem. Of Law In

---

[1] Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 42 U.S.C. §§ 1973ff to 1973ff-7, as amended by the Military and Overseas Voter Empowerment Act, ("MOVE Act"), Pub. L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009).

[2] Co-defendant New York State Board of Elections ("NYSBOE") takes no position on the merits of this portion of the United States' motion.  Letter from Kimberly A. Galvin & Paul M. Collins, Counsel, NYSBOE, to Hon. Gary L. Sharpe, at 2, Oct. 31, 2011, ECF No. 27.

Opp. to Plaintiff's Mot. for Supplemental and Permanent Relief, at 2, Oct. 31, 2011, ECF No. 31 ("[T]he State does not dispute that . . . the 2012 primary must be held at least 80 days before the 2012 general election.") [hereinafter "NY Opp. Brief"].  As data from the 2010 federal general election establish, New York requires at least 35 days after its primary election to prepare and transmit ballots for the general election.  Since UOCAVA sets a ballot transmission deadline of 45 days prior to federal general elections, New York's primary election must be at least 80 days prior to the general election—that is, 35 days prior to the 45-day advance-transmission deadline.

New York's concession is significant:  it recognizes that absent an 80-day window to prepare, finalize, and transmit ballots in future elections, it will not be able to prevent the widespread UOCAVA violations and attendant harm to UOCAVA voters that occurred in 2010. It is thus undisputed that New York must hold its 2012 primary election on a date no later than 80 days prior to the federal general election to ensure UOCAVA compliance and the voter enfranchisement UOCAVA seeks to guarantee.

Nonetheless, the State asks the Court to delay imposing a timely remedy and grant it still more time—until February 2012—to set its own UOCAVA-compliant election schedule.  The Court should deny that request.

First, despite the fact that UOCAVA's ballot transmission deadline has been in effect for over two years, and the Defendants' October 2010 acknowledgement that state law and/or procedures must change to ensure future UOCAVA compliance, *see* Consent Decree, at 11-12, Oct. 19, 2010, ECF No. 9, New York failed to bring its federal, non-presidential primary election schedule into compliance with UOCAVA for the 2012 cycle.  Moreover, even now the State provides no assurance it will enact the necessary changes when its legislature reconvenes in 2012, or that any such efforts would be completed by February 2012.  The State's ongoing

failure to resolve this issue over a two-year period weighs strongly against further delay, especially delay based on mere speculation as to what its legislature may or may not do.

Second, New York's assertion that its primary election date need not be set until February 2012 contradicts its prior representations to both the United States Department of Defense's Federal Voting Assistance Program ("FVAP") and to this Court.  Indeed, New York's 2010 waiver application to FVAP avowed that any modifications to the State's primary date during an election year would impose an unreasonable burden on the State and risk the orderly administration of elections.  Letter from Robert A. Brehm, Co-Exec. Dir. of the N.Y. State Bd. of Elections to Robert Carey, Fed. Voting Assistance Program Dir., at 2-4 (Apr. 23, 2010), attached as Ex. A.  Its August 30, 2011 waiver application for the 2012 election reaffirms that claim, noting that "a significant change in the primary election date . . . at this late date will impose an undue hardship that is likely to harm voters."  N.Y. State 2012 Waiver Application, at 3 (Aug. 30, 2011), attached at Ex. B.  Moreover, the Defendants acknowledged during the July 13, 2011 status conference with the Court that the time-sensitive nature of this issue strongly favored its resolution by the end of 2011.  Given that New York has repeatedly cited the substantial burden created by election-year changes to its primary election schedule, the Court should reject the State's change of position and its latest request for more delay.

Third, to the extent that New York opposes the United States' motion on the ground that the United States seeks an "unrealistically short deadline" in which to establish a UOCAVA-compliant election schedule, New York misconstrues the relief sought.  Should the Court grant the United States' motion, the proposed order would provide Defendants 10 days to *recommend* a UOCAVA-compliant primary election schedule to the Court.  This does not require that the New York legislature enact a final election schedule during that 10-day period.  Rather, the

proposed order merely seeks to give Defendants an appropriate opportunity to present a primary election schedule that best accounts for state law election requirements and the State's interests in election administration.  Significantly, the proposed order does not preclude the legislature from setting a new UOCAVA-compliant primary date on its own schedule at any time, either before or after the Court's ruling.[3]  Far from imposing unreasonable scheduling demands on Defendants, the United States' proposed order simply seeks to ensure the State's UOCAVA compliance while giving Defendants an appropriate opportunity for input into any election schedule set by the Court.

Finally, given the State's ongoing failure to act and its representations as to the harms election year scheduling changes will inflict, only an immediate order from this Court will guarantee New York's UOCAVA compliance in 2012.  New York concedes that absent a waiver, it could comply with UOCAVA only if its primary date is modified.  NY Opp. Brief, at 2 ("[S]hould the waiver application be denied, the State does not dispute that . . . the 2012 primary must be held at least 80 days before the 2012 general election.").  The State's waiver application for the 2012 federal primary and general elections has now been denied by the Department of Defense.  United States' Notice and Exs. A and B thereto, Nov. 16, 2011, ECF Nos. 39, 39-1, and 39-2.  Accordingly, the primary election date must be moved.  This Court has the authority to order this relief, and such relief is timely and appropriate.[4]  *See* Corrected Mem. In Supp. of

---

[3] As the parties and the Court recognized at the July 13, 2011 status conference, the United States' motion to set a new primary date will be obviated if the New York legislature selects a UOCAVA-compliant primary election date before the Court rules.  Further, even if this Court grants the United States' motion and selects a new primary election date, nothing prevents the New York legislature from subsequently selecting a different UOCAVA-compliant federal primary election date if it so chooses.  Once approved by the Court, that date would supersede any date ordered by this Court and thus fully vindicate State interests.

[4] The Second Circuit has unambiguously endorsed the modification of election dates as an appropriate equitable remedy in voting rights cases.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 357 F.3d 260, 262-63 (2d Cir. 2004) (reversing district court's refusal to modify election schedule and ordering new election schedule as proper equitable relief for Voting Rights Act violation).

4

Mot. for Supplemental and Permanent Relief, at 10-13, Sept. 23, 2011, ECF No. 18-1 [hereinafter "U.S. Brief"].  Given the years of legislative inaction and the fast-approaching start of the 2012 election cycle, only an order from this Court will guarantee the State's UOCAVA compliance in 2012 and protect its UOCAVA voters from wrongful disenfranchisement.

      **B.**    **Defendants' Conflicting Post-Election Data Jeopardize Complete Relief for Affected Voters**

The State concedes that it should count timely-requested UOCAVA ballots that were transmitted after October 10, 2010 but rejected solely because they were returned after the ballot receipt deadline.  NY Opp. Brief, at 3 ("The United States also seeks relief in connection with the counting of ballots for the 2010 general federal election . . . .  The State does not oppose this relief . . . ."); *see* Letter from Kimberly A. Galvin & Paul M. Collins, Counsel, NYSBOE, to Hon. Gary L. Sharpe, at 1-2, Oct. 31, 2011, ECF No. 27 (opposing only the facts concerning the number of affected ballots).  As accurate data are crucial to ensuring that all affected ballots are located and counted, the Defendants' conflicting post-election data risks complete relief for those voters casting such ballots.

Based on data provided by Defendants pursuant to the Consent Decree, the United States' motion estimated that at least 731 ballots were impacted by Defendants' widespread UOCAVA violations.  U.S. Brief, at 6, 14 & n.2.  Defendants now contend, however, based on new data that has not previously been provided to the Court or the United States, that only one ballot was actually impacted.  Because the State admits the need for a further remedial order to count any affected ballots, but contests the number of such ballots on the basis of new data that contradicts its prior representations in this litigation, the Court should order a survey of the county boards of elections to ensure complete and accurate relief.

5

First, the ballot-related data provided in Defendants' opposition papers conflict with data previously provided to the United States pursuant to the Consent Decree.  Defendants currently identify 13 counties that transmitted timely-requested UOCAVA ballots after October 10: Cortland, Hamilton, Livingston, Montgomery, Rockland, Saratoga, Suffolk, Westchester, Bronx, Kings, New York, Richmond, and Queens.[5]  *See* Aff. of Thomas Connolly, ¶ 7, Oct. 31, 2011, ECF No. 26 [hereinafter "Connolly Aff."].  Yet, Defendants previously provided the United States with spreadsheets indicating that a *different* set of counties transmitted timely-requested ballots after October 10, 2010:  Cayuga, Chenango, Clinton, Columbia, Genesee, Monroe, Montgomery, Livingston, Onondaga, Putnam, Schenectady, Suffolk, and Westchester.[6]  *See* U.S. Brief, at 5-6, 13-14.  These significant discrepancies raise basic questions about the accuracy, completeness, and reliability of Defendants' information.

Second, the Defendants' latest proffer appears to offer conflicting information. Paragraphs 9 and 10 of the Connolly Affidavit purport to identify 69 ballots in five counties that were (1) requested before October 10, 2010, (2) transmitted to voters after October 10, 2010, and (3) "not counted solely because they were received after November 24, 2010."  Connolly Aff. ¶¶ 9-10.  These paragraphs seem to identify the final set of ballots that should be counted if the Court grants the United States' motion.  However, paragraphs 11 and 12 of the affidavit claim that "this is not the end of the inquiry" because "only one voter whose ballot was sent out after October 10, 2010 had that ballot disqualified solely because it was received by the board of elections after November 24, 2010."  *Id*. ¶¶ 11-12 (emphasis removed).  The logic behind this

---

[5] The inclusion of the New York City counties in this subset also directly conflicts with the facts provided by Defendants in the Consent Decree.

[6] Additionally, this list of 13 counties may be under-inclusive, as the Defendants' spreadsheets only identified counties that received ballot requests as of October 1, 2010 (as opposed to October 10).  Accordingly, there may be additional counties that received timely UOCAVA ballot requests between October 1 and October 10, 2010, but transmitted those ballots after October 10, 2010.  The United States' requests for clarifying data went unanswered.

analysis is unclear: although paragraphs 9 and 10 identify 69 ballots that should be subject to the Court's order, paragraphs 11 and 12 appear to use that same analysis to identify only one affected ballot from the same set of counties. This apparent contradiction further calls into question the reliability of Defendants' data.

Finally, the United States notes that this is not the first time Defendants have provided incomplete, inconsistent, or inaccurate data concerning UOCAVA ballots in the 2010 election. *See* U.S. Brief, at 5-6, 8, 13-14. Given the basic accuracy issues marring Defendants' ballot data throughout the course of this litigation, and given that Defendants' newly-presented data are contradicted by the data previously provided to the United States, the United States respectfully submits that this Court should reject Defendants' contention that only a single ballot was affected by Defendants' widespread UOCAVA non-compliance.

The United States respectfully suggests that the unreliability of the Defendants' conflicting data justifies an order of this Court requiring Defendants to re-survey the county boards of elections to obtain a final, accurate tally of all timely-requested, late-transmitted, and late-returned ballots from the 2010 federal general election.[7] Such a Court-supervised survey is necessary to guarantee that all affected ballots are properly identified and, where appropriate, counted.

A proposed survey form is included in a modified proposed order, attached as Ex. C.[8] This brief form is designed to identify all UOCAVA ballots that were requested by October 10, 2010, transmitted after that date, and that were not counted solely because they were returned to

---

[7] The United States intends to confer with Defendants to develop procedures for accurate and timely pre- and post-election reporting for all the federal elections in the 2012 election cycle, and reserves the right to seek an order from this Court requiring such reporting.

[8] The modified proposed order attached hereto is intended to supersede the proposed order previously filed with the Court (ECF No. 18-3). It modifies just that portion of the prior order addressing procedures for counting improperly-rejected UOCAVA ballots.

election officials after the final ballot receipt deadline. The form further requires each county board's chief official to attest to the accuracy of the information reported and includes a notification that the form will be submitted to the Court pursuant to its order. Although the United States recognizes that this relief goes beyond that initially requested in its motion, a Court-supervised survey is necessary to resolve the inconsistencies between the different sets of data presented by the State at different points in this litigation, and to ensure, to the extent possible, that the rights of all wrongly-disenfranchised UOCAVA voters in 2010 are vindicated.

## II.     CONCLUSION

For the reasons given above, the United States respectfully requests an order that (1) moves New York's primary election to a date no later than 35 days prior to UOCAVA's 45-day ballot transmission deadline (i.e., at least 80 days before the federal general election), beginning in 2012, (2) requires New York to re-survey its county boards of elections to identify all timely-requested and otherwise valid UOCAVA ballots that were transmitted to voters after October 10, 2010, but rejected only because they were received by election officials after November 24, 2010, and (3) orders New York to count all ballots identified pursuant to this order and take all necessary steps to recertify the election results of any affected county.

                                                     Respectfully submitted,

Date:  November 18, 2011

| | |
|---|---|
| RICHARD S. HARTUNIAN | THOMAS E. PEREZ |
| United States Attorney | Assistant Attorney General |
| Northern District of New York | Civil Rights Division |
| | |
| BARBARA COTTRELL- 101411 | */s/ Risa Berkower* |
| Assistant United States Attorney | T. CHRISTIAN HERREN JR. |
| Northern District of New York | REBECCA WERTZ |
| 445 Broadway, Room 218 | RICHARD DELLHEIM - 512893 |
| Albany, NY 12207-2924 | ERNEST MCFARLAND |
| Telephone:     (518) 431-0247 | RISA BERKOWER - 106877 |
| Facsimile:     (518) 431-0249 | Attorneys, Voting Section |
| | Civil Rights Division |
| | U.S. Department of Justice |
| | 950 Pennsylvania Avenue, N.W. |
| | Washington, D.C. 20530 |
| | Telephone:     (202) 307-6552 |
| | Facsimile:     (202) 307-3961 |

CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2011, I served a true and correct copy of the United States' Reply Memorandum in Support of its Motion for Supplemental and Permanent Relief via the Court's ECF filing system to the following counsel of record:

Jeffrey M. Dvorin
Bruce J. Boivin
Office of the Attorney General-Albany
Department of Law
The Capitol
Albany, NY 12224

Kimberly A. Galvin
Paul M. Collins
New York State Board of Elections
Office of Special Counsel
40 Steuben Street
Albany, New York 12207-1650

David L. Lewis
Lewis, Fiore Law Firm
225 Broadway, Suite 3300
New York, NY 10007-3001

*/s/ Risa Berkower*
Risa Berkower
Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D, C, 20530
(202) 305-1734