# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK
# ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff*,<br><br>v.<br><br>STATE OF NEW YORK and THE NEW YORK STATE BOARD OF ELECTIONS,<br><br>*Defendants*. | Case No. 1:10-CV-1214-GLS-RFT |

**TIM HARKENRIDER, GUY C. BROUGHT, LAWRENCE CANNING, PATRICIA CLARINO, GEORGE DOOHER, JR., STEPHEN EVANS, LINDA FANTON, JERRY FISHMAN, JAY FRANTZ, LAWRENCE GARVEY, ALAN NEPHEW, SUSAN ROWLEY, JOSEPHINE THOMAS, AND MARIANNE VOLANTE'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO INTERVENE**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

ARGUMENT .............................................................................................................................. 7

    I.    The Harkenrider Proposed Intervenors Are Entitled To Intervene As Of Right Under Rule 24(a)(2), Given Their Direct And Substantial Interests In New York's Congressional Districts And The 2022 Election Cycle.............. 8

    II.   Alternatively, This Court Should Grant The Harkenrider Proposed Intervenors Permissive Intervention Under Rule 24(b)(1)(B) ........................ 13

CONCLUSION......................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*,
 No. 19-CV-11285, 2020 WL 5658703 (S.D.N.Y. Sept. 23, 2020) ............... 13, 14

*Brennan v. N.Y.C. Bd. of Educ.*,
 260 F.3d 123 (2d Cir. 2001) ................................................................. 9, 10, 11

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
 250 F.3d 171 (2d Cir. 2001) ................................................................................. 12

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
 170 F.R.D. 93 (E.D.N.Y. 1996) ............................................................................ 10

*Crossroads Grassroots Pol'y Strategies v. FEC*,
 788 F.3d 312 (D.C. Cir. 2015) ............................................................................. 12

*Diamond v. Charles*,
 476 U.S. 54 (1986) ............................................................................................... 10

*Donaldson v. United States*,
 400 U.S. 517 (1971) ............................................................................................... 9

*Favors v. Cuomo*,
 No. 11-CV-5632, 2012 WL 928223 (E.D.N.Y. Mar. 19, 2012) ........................... 2

*Floyd v. City of N.Y.*,
 770 F.3d 1051 (2d Cir. 2014) ........................................................................... 8, 9

*Fund For Animals, Inc. v. Norton*,
 322 F.3d 728 (D.C. Cir. 2003) ............................................................................. 12

*Harkenrider v. Hochul*,
 ___N.E.3d.___, 2022 WL 1236822 (N.Y. Apr. 27, 2022) ............................ 1, 2, 4

*Herdman v. Town of Angelica*,
 163 F.R.D. 180 (W.D.N.Y. 1995) ......................................................................... 9

*In re N.Y.C. Policing During Summer 2020 Demonstrations*,
 27 F.4th 792 (2d Cir. 2022) ................................................................... 8, 11, 13

*Laroe Estates, Inc. v. Town of Chester*,
 828 F.3d 60 (2d Cir. 2016) .................................................................................... 8

*N.Y. Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*,
 516 F.2d 350 (2d Cir. 1975) ................................................................................ 11

*Olin Corp. v. Lamorak Ins. Co.*,
 325 F.R.D. 85 (S.D.N.Y. 2018) ........................................................................... 14

*Town of Chester v. Laroe Ests., Inc.*,
 137 S. Ct. 1645 (2017) ........................................................................................... 9

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) .................................................................................................. 11

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) ..................................................................................... 14

*XL Specialty Ins. Co. v. Lakian*,
    632 F. App'x 667 (2d Cir. 2015) ................................................................................ 9

**Constitutional Provisions**

N.Y. Const. art. III, § 4 ........................................................................................... 2, 3

N.Y. Const. art. III, § 5 ................................................................................................ 2

**Statutes And Rules**

2 U.S.C. § 2c ................................................................................................................. 5

Fed. R. Civ. P. 24 ...................................................................................... 1, 7, 13, 14

## PRELIMINARY STATEMENT

Proposed Intervenors Tim Harkenrider, Guy C. Brought, Lawrence Canning, Patricia Clarino, George Dooher, Jr., Stephen Evans, Linda Fanton, Jerry Fishman, Jay Frantz, Lawrence Garvey, Alan Nephew, Susan Rowley, Josephine Thomas, and Marianne Volante (collectively, the "Harkenrider Proposed Intervenors"), all citizens that reside and vote in New York, move to intervene as defendants under Federal Rule of Civil Procedure 24.  The Harkenrider Proposed Intervenors are the Petitioners in a pending lawsuit in which the state courts: (1) struck down as unconstitutional under the New York Constitution the egregiously gerrymandered and procedurally improper 2022 enacted congressional map, and (2) ordered New York to hold on August 23, 2022, its congressional primary election under a constitutional map that "compli[es] with federal voting laws, including the Uniformed and Overseas Citizens Absentee Voting Act." *Harkenrider v. Hochul*, ___N.E.3d.___, 2022 WL 1236822, at *12 (N.Y. Apr. 27, 2022).  Following those decisions, Defendant the New York State Board of Elections ("Board of Elections") has "request[ed] that the August 23, 2022 primary date set for congress be recognized and ordered by this [C]ourt as well," and noted that "the Department of Justice does not oppose this application."  Dkt.92 at 2–3.  The Harkenrider Proposed Intervenors respectfully request that this Court consider their letter in support of granting the Board of Elections' application, as the Harkenrider Proposed Intervenors satisfy the requirements for both intervention as of right and permissive intervention.

## FACTUAL BACKGROUND

**A.  New York Courts Have Adopted An Orderly Process To Hold A Primary Election On A Constitutional Congressional Map On August 23**

In 2012, the court in *Favors v. Cuomo* established New York's then-27 congressional districts, but since then, the State has experienced population shifts causing it both to lose a congressional seat and to experience unconstitutional malapportionment in its districts. *See generally Favors v. Cuomo*, No. 11-CV-5632, 2012 WL 928223 (E.D.N.Y. Mar. 19, 2012). Now, New York's per-district population goal is 776,971 persons for each of its now-26 congressional districts, while its per-district population goal in 2012 was 719,298 persons for each of its then-27 congressional districts.

Under amendments to the New York Constitution that the People of New York adopted in 2014, New York now has an exclusive process of adopting redistricting maps, and makes clear that if that process fails, New York courts must draw the redistricting maps for the State. This exclusive process requires that the New York Legislature consider and reject two sets of maps created by the New York Independent Redistricting Commission ("IRC"), before it has any authority to draw its own maps. N.Y. Const. art. III, § 4(b). If this process falters, the Legislature does not have the authority to draw new maps and courts must adopt new maps, upon the suit of any citizen. *Id.* §§ 4(b), (e), 5; *Harkenrider*, 2022 WL 1236822, at *11–13. And substantively, the 2014 amendments specifically prohibited any mapdrawer from drawing maps "to discourage competition or for the purpose of favoring or disfavoring

incumbents or other particular candidates or political parties." N.Y. Const. art. III, § 4(c)(5).

After the New York Legislature violated the 2014 Amendment's exclusive process for redistricting and thus enacted no valid replacement congressional map, the Harkenrider Proposed Intervenors filed a lawsuit in Steuben County Supreme Court, asking, as relevant here, that the courts to carry out their constitutional duty to enact a constitutional congressional map to govern the 2022 elections. *See* Declaration of Misha Tseytlin ("Tseytlin Decl."), Ex.A at 82. The Harkenrider Proposed Intervenors sued the Board of Elections, among other defendants, which decided to take no stance on the case. *See* Tseytlin Decl., Ex.B.

The Supreme Court ruled in favor of the Harkenrider Proposed Intervenors on March 31, 2022, holding that if the Legislature fails to adopt constitutionally sound maps by April 11, 2022, the court would retain a neutral expert to prepare a new congressional map to govern the 2022 election. Tseytlin Decl., Ex.C at 10, 14, 18. Additionally, the Supreme Court held that the 2012 congressional map was "no longer valid due to unconstitutional malapportionment and therefore can not be used," Tseytlin Decl., Ex.C at 17, an aspect of the Decision from which no party appealed.

Thereafter, on appeal, the New York Court of Appeals agreed with the Supreme Court and held "the enactment of the congressional and senate maps by the legislature was procedurally unconstitutional, and the congressional map is also substantively unconstitutional as drawn with impermissible partisan purpose, leaving the state without constitutional district lines for use in the 2022 primary and

- 3 -

general elections." *See Harkenrider*, 2022 WL 1236822, at *11. The Court of Appeals then ordered the Supreme Court to act "with all due haste" to create and adopt "constitutionally conforming maps for use in the 2022 election." *Id.* at *1, 13. The Court of Appeals specifically acknowledged pertinent federal deadlines pertaining to elections, explaining that the "Supreme Court can swiftly develop a schedule to facilitate an August primary election, allowing time for the adoption of new constitutional maps, the dissemination of correct information to voters, the completion of the petitioning process, and compliance with federal voting laws, including the Uniformed and Overseas Citizens Absentee Voting Act." *Id.* at *12.

On remand, the Supreme Court entered an order on April 29, 2022, stating that a proposed remedial congressional map will be adopted by May 20, 2022, the primary election would be held on August 23, 2022, and "the deadline for military and overseas ballots to be mailed will be July 8, 2022." *See* Tseytlin Decl., Ex.D at 2. In the interim, the parties and other interested persons submitted to the Supreme Court and Special Master proposed congressional maps, and all interested persons had the opportunity to appear and give public testimony on proposed maps before the Supreme Court and Special Master on May 6. *See* Tseytlin Decl., Ex.E.

### B. The De Gaudemar Proposed Intervenors Attempt To Disrupt The New York State Courts' Redistricting Efforts With Frivolous Filings In Two Federal Courts

On May 2, 2022, Belinda de Gaudemar, Anthony Hoffmann, Susan Schoenfeld, Nancy Pascal, and Michael Corbett (hereinafter, the "De Gaudemar Proposed Intervenors") filed suit in the Southern District of New York, *see De Gaudemar v.*

*Kosinski*, No.1:22-cv-03534 (S.D.N.Y. May 2, 2022), Dkt.1,[*] bizarrely asserting that use of the 2012 Congressional Map that the New York courts already invalidated would violate their constitutional rights. *De Gaudemar* Dkt.1 at 14–15. As a remedy, they requested that the court (re)enjoin the use of the 2012 map, and for the court to draw its own remedial map for the State to "conduct its primary on June 28, 2022, as required by federal court order." *De Gaudemar* Dkt.1 at 15–16. And they clarified that their request for the court to draw its own map just meant that the court should "adopt . . . the one passed by the New York Legislature and signed by Governor Hochul on February 3, 2022," *De Gaudemar* Dkt.1 at 13, meaning they seek to force upon the People of New York the very map that the Legislature unconstitutionally purported to enact without any authority under the New York Constitution.

At the May 4, 2022 oral argument hearing, the Hon. Judge Kaplan in the Southern District of New York swiftly denied the De Gaudemar Proposed Intervenors' request. Judge Kaplan admonished the De Gaudemar Proposed Intervenors for their attempt to misuse the federal courts, describing their application for injunctive relief as "a Hail Mary pass, the object of which is to take a long shot try as having the New York primaries conducted on district lines that the State says are unconstitutional." Dkt.98-7 at 15. Judge Kaplan explained that the

---

[*] The day of the May 4, 2022 temporary-restraining-order hearing, De Gaudemar Proposed Intervenors attempted to amend their lawsuit to add a new claim alleging that delaying the primary to August "would make it unlikely" for the Board of Elections to comply with UOCAVA's 45-day deadline. *De Gaudemar* Dkt.30 at 15. However, this claim is also patently without merit, as the De Gaudemar Proposed Intervenors have no authority to enforce UOCAVA and even acknowledged at the hearing that "it is theoretically possible to comply with UOCAVA with an August 23rd primary." Dkt.98-7 at 5.

De Gaudemar Proposed Intervenors' injunctive request would only create confusion that fails to "serve[ ] anybody's interest," Dkt.98-7 at 17, and is "against the public interest," Dkt.98-7 at 39.  Judge Kaplan observed that the De Gaudemar Proposed Intervenors "not only ignor[ed] that their requested districts were improperly gerrymandered districts," but they sought to preserve the June 28th primary "without any regard for the chaos" that such request would "trigger." Dkt.98-7 at 38–39.  Such request would "impinge[ ], to some degree, on the public perception" of "[f]ree, open, rational elections" and the "respect for the courts," Dkt.98-7 at 40.  Notably, Judge Kaplan explained that this Court's 2012 order was "rendered in entirely different circumstances on an evidentiary record which is 10 years or more old," and found that the De Gaudemar Proposed Intervenors presented "no evidence" to suggest that the State could not comply with UOCAVA requirements under an August primary date.  Dkt.98-7 at 33–34.  In short, Judge Kaplan found the De Gaudemar Proposed Intervenors' requested relief "unconstitutional" and "unnecessary." Dkt.98-7 at 18.

The De Gaudemar Proposed Intervenors (now comprising only Belinda de Gaudemar and Susan Schoenfeld) have now continued their scheme of abuse of the federal courts from the Southern District of New York to this Court, trying to stop orderly and timely 2022 elections in New York under constitutional maps.  On May 5, 2022, the Board of Elections submitted a letter motion to this Court "requesting that the August 23, 2022 primary date set for congress be recognized and ordered by this [C]ourt as well," noting that the U.S. Department of Justice "d[id] not oppose this

application." Dkt.92 at 2–3. The following day, counsel for the De Gaudemar Proposed Intervenors moved to stop this straightforward and unopposed letter motion, expressing their intent to file a motion to intervene and oppose the supplemental order offered by the Board of Elections. Dkt.94. Continuing their campaign to circumvent the New York Constitution, basic principles of federalism, and the judgment that the Harkenrider Proposed Intervenors previously secured in the state courts to ensure a constitutional congressional map is in place for the 2022 elections, counsel for the De Gaudemar Proposed Intervenors filed their motion to intervene later that evening. Dkts.97, 98. On May 6, 2022, counsel for the Harkenrider Proposed Intervenors also submitted a letter motion to this Court, stating that should the Court delay ruling on the Board of Elections' application in order to hear from proposed intervenors, they would seek to intervene on Monday, May 9, 2022. Dkt.96.

## ARGUMENT

Federal Rule of Civil Procedure 24(a)(2) provides that an applicant may intervene in an action as of right "[o]n timely motion," if that applicant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Court may also afford an applicant permissive intervention under Rule 24(b)(1) if the party "has a claim or defense that shares with the main action a common question of law or fact."

*Id.* 24(b)(1)(B). Here, the Harkenrider Proposed Intervenors satisfy Rule 24(a)(2), thus, this Court should grant them intervention as of right. *Infra* Part I. Alternatively, this Court should grant the Harkenrider Proposed Intervenors permissive intervention under Rule 24(b)(1). *Infra* Part II.

I.  **The Harkenrider Proposed Intervenors Are Entitled To Intervene As Of Right Under Rule 24(a)(2), Given Their Direct And Substantial Interests In New York's Congressional Districts And The 2022 Election Cycle**

An applicant must satisfy four elements to intervene as of right under Rule 24(a)(2): The applicant "must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (citation omitted). The Harkenrider Proposed Intervenors satisfy each of these four elements.

1. *The motion is timely*. To "determin[e]" whether a motion to intervene is "timel[y]," this Court considers : "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Floyd v. City of N.Y.*, 770 F.3d 1051, 1058 (2d Cir. 2014). The Second Circuit has found intervention to be timely when an applicant moves for intervention early and causes no delay in the proceedings. *See, e.g., Laroe Ests., Inc. v. Town of Chester*, 828 F.3d 60, 67 (2d Cir. 2016), *vacated and remanded on other*

*grounds sub nom. Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645 (2017) (recognizing that intervention was timely where the parties had not yet begun discovery). The Harkenrider Proposed Intervenors' intervention motion is plainly timely, given that they filed this Motion within two business days of the Board of Elections' filing of its letter motion to modify the Court's 2012 injunction and allow New York to hold its congressional primary on August 23, 2022. Dkt.92.

2. *The Harkenrider Intervenors have a direct and substantial interest.* For intervention-as-of-right purposes, an interest "must be direct, substantial, and legally protectable." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (citation omitted); *accord Donaldson v. United States*, 400 U.S. 517, 531 (1971) (requiring "significantly protectable interest"). When a party has obtained a judgment in a matter, that can provide a "legally protectable" interest in the outcome of any related proceedings that may affect that judgment. *See, e.g.*, *XL Specialty Ins. Co. v. Lakian*, 632 F. App'x 667, 669–70 (2d Cir. 2015) (holding that investors who obtained a judgment against a financial services company had a "legally protectable" interest in suit by insurance company against the same creditor because they had an interest in any funds paid pursuant to the policy). An interest "will not satisfy [Rule 24]" when it is "remote from the subject matter of the proceeding, or . . . is contingent upon the occurrence of a sequence of events before it becomes colorable." *Floyd*, 770 F.3d at 1060 (citations omitted). Further, "[t]he Supreme Court has recognized that 'certain public concerns may constitute an adequate "interest" within the meaning of [Rule 24(a)(2)].'" *Herdman v. Town of Angelica*, 163 F.R.D. 180, 187 (W.D.N.Y. 1995)

(alteration in original) (quoting *Diamond v. Charles*, 476 U.S. 54, 68 (1986)). This Court, therefore, must "take into account both the public nature" of the instant litigation "and the basis for, and strength of, [the Harkenrider Proposed Intervenors'] particular interest in the outcome of the litigation." *Id.*; *accord Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 100 (E.D.N.Y. 1996).

The Harkenrider Proposed Intervenors now have a direct and substantial interest in this case, *Brennan*, 260 F.3d at 129—and, specifically, in this Court granting the Board of Elections' letter motion allowing New York to hold an August 23 primary. The Harkenrider Proposed Intervenors brought suit in New York state court, securing a judgment in the Steuben County Supreme Court that moved the primary election date to August 23 *for the 2022 elections*, *see* Tseytlin Decl., Ex.C at 10, 14, 17, 18, which was one of the Harkenrider Proposed Intervenors' key requests for relief throughout the state-court case, Tseytlin Decl., Ex.A at 82.

Additionally, and independently, as citizens who regularly vote in New York congressional elections, the Harkenrider Proposed Intervenors have a "direct, substantial, and legally protectable interest" in an orderly process for the creation and implementation of the 2022 Congressional Map. *See Brennan*, 260 F.3d at 129. The Harkenrider Proposed Intervenors have an interest in ensuring the 2022 congressional elections take place in an orderly, timely manner under *constitutional* maps, which can best be accomplished with an August 23 primary date.

3. *Denial of the Board of Elections' letter motion could impair the Harkenrider Proposed Intervenors' direct and substantial interest.* As just explained, the

Harkenrider Proposed Intervenors have a significant interest in New York holding its congressional primary on August 23—as the Board of Elections has requested in its letter motion to this Court—which is the most optimal way to proceed in this 2022 election cycle under a constitutional remedial map adopted by the Steuben County Supreme Court. Denial of the Harkenrider Proposed Intervenors' intervention request will directly "impair or impede" the Harkenrider Proposed Intervenors' "ability to protect their interests." *N.Y. Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975). As discussed, the Harkenrider Proposed Intervenors seek to have New York hold this year's congressional primary on August 23, as that is the most logical means of protecting the Harkenrider Proposed Intervenors' interest in constitutionally drawn maps, per the state-court judgment.

4. *The parties do not adequately represent the Harkenrider Proposed Intervenors' interests.* Finally, intervention under Rule 24(a)(2) is warranted when there is "sufficient doubt about the adequacy of representation." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972). "This requirement 'is satisfied if the applicant shows that representation of his interest "may be" inadequate; and the burden of making that showing should be treated as minimal." *In re N.Y.C. Policing*, 27 F.4th at 803 (quoting *Trbovich*, 404 U.S. at 538 n.10). Courts must permit intervention under this factor unless the interests of existing parties are "so similar to those of [intervenors] that adequacy of representation [is] assured." *Brennan*, 260 F.3d at 132–33. Where a proposed intervenor has the same ultimate objective as a

defendant, it is the proposed intervenors' burden to overcome the presumption of adequacy. *See Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179–80 (2d Cir. 2001). The Second Circuit has not precisely defined what is necessary to meet this heightened burden. *See id.* at 180 (holding that, while "not an exhaustive list, . . . evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy").

Here, the liberal, default rule applies because no party's interests are identical to the Harkenrider Proposed Intervenors' interests—and, *a fortiori*, no government party has the duty to represent the Harkenrider Proposed Intervenors' interests in this case. All existing parties—the U.S. Department of Justice and the Board of Elections—are government entities, and "governmental entities do not adequately represent the interests of aspiring [private] intervenors." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *see also, e.g.*, *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[W]e look skeptically on government entities serving as adequate advocates for private parties."). The government/private-party distinction is an independently sufficient reason for satisfying the adequacy-of-representation element.

The New York Board of Elections and the U.S. Department of Justice do not adequately represent the Harkenrider Proposed Intervenors' interests under any standard. As for the Board of Elections, it took no position on the merits of the Harkenrider Proposed Intervenors' claims in the state case. *See supra* p. 3. Further, the Harkenrider Proposed Intervenors seek to protect the judgment they secured in

the state-court action, which is a judgment entered *against* the Board of Elections. *See* Tseytlin Decl., Ex.C. Consequently, while the Board of Elections has now moved this Court to allow New York to hold its primary on August 23, the Board of Elections cannot be expected to rigorously defend the Harkenrider Proposed Intervenors' interests in their state-court judgment. *See In re N.Y.C. Policing*, 27 F.4th at 803. The U.S. Department of Justice only has an interest in ensuring state compliance with UOCAVA, *see generally* Dkt.1, therefore, the U.S. Department of Justice has no interest in a specific primary date that provides New York State Courts the opportunity to create a court-drawn map. *See In re N.Y.C. Policing*, 27 F.4th at 803.

## II.  Alternatively, This Court Should Grant The Harkenrider Proposed Intervenors Permissive Intervention Under Rule 24(b)(1)(B)

Alternatively, the Harkenrider Proposed Intervenors respectfully request that this Court grant them permissive intervention under Rule 24(b)(1)(B). Permissive intervention has two elements: the intervenor must "timely" move to intervene and must have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Further, this Court may, in its "very broad" discretion, consider other relevant factors, including "the nature and extent of the intervenors' interests, and whether [the] parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, No. 19-CV-11285, 2020 WL 5658703, at *5–6 (S.D.N.Y. Sept. 23, 2020) (citation omitted; alteration in original); *see also U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191–92

(2d Cir. 1978). Overall, permissive intervention under Rule 24(b) "is to be liberally construed" in favor of intervention. *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018) (citation omitted); *see also U.S. Postal Serv.*, 579 F.2d at 191 ("Permissive intervention is wholly discretionary with the trial court."). The "principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Olin*, 325 F.R.D. at 87 (citation omitted).

This Court should grant the Harkenrider Proposed Intervenors permissive intervention. First, the Harkenrider Proposed Intervenors' Motion To Intervene is timely, as already described above with respect to intervention as of right. *Supra* pp. 8–9. Second, the Harkenrider Proposed Intervenors have filed a proposed Answer, which "shares with the main action a question of law or fact," *Bldg. & Realty Inst.*, 2020 WL 5658703, at *5 (quoting Fed. R. Civ. P. 24(b)(1)(B))—namely, whether this Court should modify its 2012 permanent injunction so as to allow New York to hold its congressional primary on August 23, 2022. Finally, the Harkenrider Proposed Intervenors have direct and substantial interests here. As discussed above, the Harkenrider Proposed Intervenors have a significant interest in ensuring the State will hold its congressional elections on August 23, on a constitutional map. *Supra* pp. 9–10. As the party who secured a state-court judgment below, which includes an order that the State conduct its primary elections on August 23, 2022, the Harkenrider Proposed Intervenors offer a unique perspective in this case.

## CONCLUSION

This Court should grant the Harkenrider Proposed Intervenors' Motion To Intervene.

Dated:   May 9, 2022                            Respectfully submitted,

By:/s/ Misha Tseytlin
    Misha Tseytlin
    TROUTMAN PEPPER HAMILTON
    SANDERS LLP
    227 W. Monroe Street
    Suite 3900
    Chicago, IL 60606
    Telephone: 608.999.1240
    Facsimile: 312.759.1939
    E-mail: misha.tseytlin@troutman.com

    *Attorney for the Harkenrider Proposed Intervenors*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of May, 2022, a true and accurate copy of the foregoing was served via the Court's CM/ECF system upon all counsel of record.

By:/s/ Misha Tseytlin
Misha Tseytlin
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
Telephone: 608.999.1240
Facsimile: 312.759.1939
E-mail: misha.tseytlin@troutman.com