Troutman Pepper Hamilton Sanders LLP
227 W. Monroe Street, Suite 3900
Chicago, IL  60606

troutman.com



**Misha Tseytlin**
misha.tseytlin@troutman.com

May 9, 2022

**VIA ECF**

The Honorable Gary L. Sharpe
United States District Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 411
Albany, NY 12207

Re:   *United States of America v. New York State Board of Elections, et al.*
         10-cv-1214 (GLS)

Dear Judge Sharpe:

   The letter motion that the New York State Board of Elections ("Board of Elections") submitted on May 5, 2022, implicates the State of New York's primary duty and right under the U.S. Constitution to conduct redistricting. After this Court issued its 2012 injunction, the People of New York in 2014 adopted a landmark constitutional amendment that set up an exclusive independent-commission-driven process for the enactment of redistricting maps, a prohibition against partisan gerrymandering, and a requirement that New York courts adopt constitutional maps if the constitutional redistricting process fails. *Harkenrider v. Hochul*, ___N.E.3d.___, 2022 WL 1236822, at *1–2 (N.Y. Apr. 27, 2022) ("*Harkenrider II*"). Unfortunately, in 2022, the New York Legislature gave into its desire to gerrymander for partisan gain, failing to enact a congressional map that complies with New York's 2014 Anti-Gerrymandering Amendments. *Id.* On the very evening that the Governor purported to sign the unconstitutional congressional map into law, Petitioners in *Harkenrider v. Hochul*, No. E2022-0116CV (N.Y. Sup. Ct. Steuben Cnty.)—who submit this letter (hereinafter, the "Harkenrider Proposed Intervenors")—filed a lawsuit. The New York courts thereafter worked at break-neck speeds to resolve this case, ultimately mandating that the New York courts themselves must create a constitutional map for the 2022 cycle. To ensure that a congressional election can be held in an orderly manner on a constitutional map in 2022, the New York courts ordered that a primary should occur on August 23, 2022, the same date (or earlier) that multiple other States hold their primaries.

   The De Gaudemar Proposed Intervenors' (now comprising only Belinda de Gaudemar and Susan Schoenfeld) filing before this Court, Dkt.98, continues their scheme to misuse the federal courts, without any basis in law. As Judge Kaplan of the Southern District of New York explained in rejecting the De Gaudemar Proposed Intervenors' arguments on this score just last week, these parties are seeking "a Hail Mary pass, the object of which is to take a long shot try as having the New York primaries conducted on district lines that the State says are unconstitutional." Dkt.92-2 at 15. Indeed, the De Gaudemar Proposed Intervenors' efforts to

**The Honorable Gary L. Sharpe**
May 9, 2022
Page 2



undermine New York's right under the U.S. Constitution to redistrict, as recognized in *Growe v. Emison*, 507 U.S. 25 (1993), would—in Judge Kaplan's powerful words—"impinge[ ], to some degree, on the public perception" of "[f]ree, open, rational elections" and the "respect for the courts." Dkt.92-2 at 40. As Judge Kaplan further explained, the De Gaudemar Proposed Intervenors lack entirely evidence that New York is unable to comply with both its obligation to hold its 2022 congressional elections on constitutional maps and the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"). Dkt.92-2 at 34, 37.

The chaos that the De Gaudemar Proposed Intervenors are asking this Court to unleash on the State of New York is, frankly, unthinkable. The New York courts will adopt a constitutional map for the 2022 congressional elections on May 20, Declaration of Misha Tseytlin ("Tseytlin Decl."), Ex.D at 2, and—as Judge Kaplan made abundantly clear—the federal courts will not interfere with New York's right under the U.S. Constitution to hold its 2022 elections under that map, as the New York Court of Appeals has ordered. Accordingly, rejecting the August 23 primary date will cause sheer chaos, triggering the need for immediate, emergency proceedings before the Second Circuit and, if necessary, the U.S. Supreme Court. While those emergency appellate proceedings are ongoing, the Board of Elections and the New York courts then would need to scramble to offer the courts a back-up contingency option should those appeals fail, so that New York can comply with the New York Court of Appeals' unambiguous mandate that a constitutional map ***must*** govern the 2022 congressional election. And while all of that is occurring, no one will know what New York's congressional primary will look like.

All of this, of course, is entirely unnecessary. This Court should simply confirm that its 2012 injunction does not apply in 2022, or alternatively, grant the Board of Elections' reasonable request to hold the congressional primary on August 23.

### I. New York Has A Right And Duty Under The U.S. Constitution To Redistrict, And New York Courts Are Carrying Out That Obligation Diligently, Including By Adopting A Constitutional Map For The 2022 Elections On May 20

The Board of Elections' letter motion, Dkt.92, contemplates a circumstance that was not at issue in this case when this Court granted the 2012 permanent injunction: New York's primary obligation under the U.S. Constitution to conduct redistricting, including—if necessary—through its courts. It is fundamental to our constitutional order that the States, not the federal government, have the primary authority to complete the redistricting process and administer elections, based on bedrock federalism principles. So, as the U.S. Supreme Court has repeatedly recognized, "reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court." *Growe*, 507 U.S. at 34 (1993) (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)). Indeed, "[t]he power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by [the U.S. Supreme] Court but appropriate action by the States in such cases has been specifically encouraged." *Scott v. Germano*, 381 U.S. 407, 409 (1965) (per curiam). Only where there is "evidence" that the "state branches will fail timely" to complete the redistricting process in a constitutional manner may the federal courts act. *Growe*, 507 U.S. at 34.

The New York courts are carrying out their redistricting "duty and responsibility" under the U.S. Constitution and have done so at break-neck speeds, such that they will "timely" adopt a constitutional map on May 20. *Id.* After the New York Legislature adopted an egregious, partisan-



gerrymandered congressional map in 2022—in violation of the New York Constitution, N.Y. Const. art. III, §§ 4–5—the New York state courts acted swiftly both to strike down that map and to order that the New York courts themselves draw a constitutional remedial map "with all due haste" for the 2022 cycle, as the New York Constitution mandates. *Harkenrider*, 2022 WL 1236822, at *13. To accommodate the state court's remedial-map-drawing process, the New York courts ordered that New York hold its congressional primary on August 23, 2022. Tseytlin Decl., Ex.D at 2. This is the kind of timely, "appropriate action" from "the judiciary of a State" that the U.S. Supreme Court has "specifically encouraged" for States to "valid[ly] reapportion or [ ] formulate a valid redistricting plan." *Scott*, 381 U.S. at 409. And, given the New York state courts' commendable speed throughout these proceedings, there is no "evidence" that the New York state courts "will fail timely" to constitutionally complete this redistricting process for the State, as would necessitate intervention from the federal courts. *Growe*, 507 U.S. at 34.

### II. New York's Chosen August 23 Primary Date Complies With Federal Law, Including The Uniformed And Overseas Citizens Absentee Voting Act

As the New York Courts timely carry out their obligation to redistrict, the New York courts have concluded that the State's primary election under the congressional map should take place on August 23, in order to complete all of the steps in a standard primary under New York law. This August 23 date is consistent with the practices of other States, *see, e.g.*, Fla. Div. of Elections, *Election Dates* (2022) ("Election Dates For 2022 are: Primary Election: August 23");[1] *see generally* Federal Elections Comm'n, *2022 Congressional Primary Dates And Candidate Filing Deadlines For Ballot Access*,[2] and fully complies with federal law—including UOCAVA.

UOCAVA "protects the federally-guaranteed voting rights of New York's military and overseas voters" by "guarantee[ing]" these individual's right "'to vote by absentee ballot in general, special, primary, and runoff elections for Federal office.'" *United States v. New York*, No. 1:10-CV-1214, Dkt.59, 2012 WL 254263, at *1 (N.D.N.Y. Jan. 27, 2012) (quoting 42 U.S.C. § 1973ff–1(a)(1), *transferred to* 52 U.S.C. § 20302(a)(1)). "New York is responsible for complying with UOCAVA and ensuring that validly-requested absentee ballots are sent to UOCAVA voters in accordance with its terms." *Id.* Pursuant to UOCAVA, States must mail applications for absentee ballots at least 30 days before the election. 52 U.S.C. § 20302(a)(2). States are also required to send absentee ballots to military and overseas voters no less than 45 days "prior to a federal general election." *New York*, 2012 WL 254263, at *1; 52 U.S.C. § 20302(a)(8) (requiring States to "transmit a validly requested absentee ballot to an absent uniformed services voter or overseas voter . . . not later than 45 days before the election" "in the case in which the request is received at least 45 days before an election for Federal office"). The States may also obtain a hardship waiver from these deadlines from the federal government, as Judge Kaplan noted. Dkt.92-2 at 20–22; 52 U.S.C. § 20302(g).

The primary date that New York courts have set—August 23—squarely complies with UOCAVA's deadlines. Under the state courts' schedule, the Board of Elections will mail military and overseas ballots by July 8, 2022, Tseytlin Decl., Ex.D at 2, which is a full **46 days before the primary elections** set for August 23, and thus obviously compliant with UOCAVA's 45-day

---

[1] Available at https://dos.myflorida.com/elections/for-voters/election-dates/ (all websites last visited May 9, 2022).

[2] Available at https://www.fec.gov/resources/cms-content/documents/2022pdates.pdf.



requirement, 52 U.S.C. § 20302(a)(8).  The New York Court of Appeals was thus entirely correct when it explained that the New York state courts, "in consultation with the Board of Elections, . . . "can swiftly develop a schedule to facilitate an August primary election, allowing time for the adoption of new constitutional maps, the dissemination of correct information to voters, the completion of the petitioning process, *and compliance with federal voting laws, including the Uniformed and Overseas Citizens Absentee Voting Act.*"  *Harkenrider II*, 2022 WL 1236822, at *12 (emphasis added).  Or, as Judge Kaplan explained, the claim "that there would be no way [for New York] to comply with UOCAVA" if the State held its primary on August 23 is "wholly unsubstantiated." Dkt.92-2 at 33–34.  Indeed, other States will hold their congressional primaries on August 23 or later without any concern that they that they fail to meet the requirements of UOCAVA or the MOVE Act.  *See, e.g.*, Fla. Div. of Elections, *supra*; Federal Elections Comm'n, *supra*.

Contrary to the De Gaudemar Proposed Intervenors' arguments, nothing in this Court's 2012 injunction impedes New York's authority to carry out its duty under the U.S. Constitution to redistrict by holding its primary day on August 23.

As a threshold matter, the 2012 injunction does not apply to the 2022 elections.  The 2012 injunction's mandate that "[i]n subsequent even-numbered years, New York's non-presidential federal primary date shall be the fourth Tuesday of June," *New York*, 2012 WL 254263, at *3, remained in place only "until New York enact[ed] legislation resetting the non-presidential federal primary election for a date that complies fully with all UOCAVA requirements, and is approved by this court," *id.*  In 2019, the New York Legislature enacted just such a law, *see* Act of Sept. 13, 2019, 2019-2020 N.Y. Reg. Sess., S6374; Dkt.92 (Board of Elections' letter explaining this change), reassuming its control over the electoral calendar, triggering the "resetting" provision of the 2012 injunction.  The De Gaudemar Proposed Intervenors resist this straightforward conclusion that flows from the plain terms of the 2012 injunction, Dkt.98 at 3–4, but their reasoning is both muddled and wrong.  The De Gaudemar Proposed Intervenors appear to argue that the New York Legislature may only reassume control over the election calendar under the "resetting" provision of this Court's 2012 injunction if it either: (a) selects a *different* primary date than the date that this Court selected in the 2012 injunction or (b) makes a specific legislative finding that the date that the Legislature selects is consistent with UOCAVA.  *See* Dkt.98 at 3–4.  Both of those arguments are wrong, however, since this Court's 2012 injunction contains no such limitations on its face.  *See generally New York*, 2012 WL 254263, at *3–5.  And while the De Gaudemar Proposed Intervenors also criticize the Board of Elections for not seeking approval from this Court, Dkt.98 at 3, there was no reason for the Board to seek approval in 2020 for selecting the very date that this Court's order contemplated, which is presumably why the Board did not seek this Court's approval for the 2020 election.  Once the State of New York had confirmed this court-selected date by statute, New York was free from the 2012 injunction, and any UOCAVA-based challenge to a one-time change in the primary date—such as this one—can only be brought by the U.S. Department of Justice filing a new lawsuit.

Even if the 2012 injunction still applied today, the Board of Elections' requested modification is exactly the type of modification that this Court envisioned, as shown by the plain text of the 2012 injunction, and the State's overriding interest in redistricting without interference from federal courts heightens the importance of this issue.  *Growe*, 507 U.S. at 34.  This Court's 2012 injunction specifically concluded that "the fourth Tuesday in June for the non-presidential



primary is in the best interest of the State," given UOCAVA's deadline, *but then it explicitly included a modification provision explaining that the Court's "decision by no means precludes New York from reconciling their differences and selecting a different date, so long as the new date fully complies with UOCAVA."* New York, 2012 WL 254263, at *2 (emphasis added). In incorporating this modification provision into the 2012 injunction, this Court stressed that the administration of elections, including the setting of primary dates, are decisions "best left to New York." *Id.* at *2–3. This correctly recognizes the State's interest in conducting elections free from undue federal-court interference. *Growe*, 507 U.S. at 34. And since this Court entered the 2012 injunction, it has allowed New York to utilize the modification provision and alter its primary-election-related deadlines, so long as those deadlines comply with the requirements of UOCAVA and the MOVE Act—including the 45-day deadline for the delivery of absentee ballots for the general election. *See* Dkts.88, 91. In sum, as long as New York's alterations to its primary election deadlines are in compliance "with UOCAVA," this Court must permit those alterations to take effect, under the terms of the 2012 injunction. *New York*, 2012 WL 254263, at *2.

Contrary to the De Gaudemar Proposed Intervenors' claims, there is no basis to deprive New York of its constitutional right and duty to control its redistricting efforts based upon concerns over UOCAVA compliance. In issuing its judgment in *Harkenrider*, the New York Court of Appeals stressed that it was "confident that, in consultation with the Board of Elections, [the Steuben County] Supreme Court can swiftly develop a schedule to facilitate an August primary election, allowing time for the adoption of new constitutional maps, the dissemination of correct information to voters, the completion of the petitioning process, and compliance with federal voting laws, *including the Uniformed and Overseas Citizens Absentee Voting Act*." *Harkenrider II*, 2022 WL 1236822, at *12 (emphasis added). Judge Kaplan reach a similar conclusion, explaining "there is just no clear reason to believe that the UOCAVA requirements can't be met for the August date." Dkt.92-2 at 35–36. Indeed, Counsel for the De Gaudemar Proposed Intervenors even admitted before Judge Kaplan that "technically on paper" New York's August 23 primary date "theoretically . . . compl[ies] with UOCAVA." Dkt.92-2 at 5–6.

The De Gaudemar Proposed Intervenors devote much of their argument to diminishing the Board of Elections' hard work in administering the State's elections, drawing comparisons to unrelated aspects of past elections, and purporting to predict the future. Dkt.98 at 4–6. These assertions range from irrelevant to pure conjecture, as Judge Kaplan explained. Dkt.92-2 at 34. The De Gaudemar Proposed Intervenors first claim that "election administration" in New York has "only gotten worse over the past decade," and thus, the August primary "risks disenfranchising UOCAVA voters." Dkt.98 at 4. They then proceed to list "examples of the structural flaws" in past elections—none of which provide any support for the claim that UOCAVA voters will be disenfranchised in 2022. The listed incidents range from isolated clerical errors to COVID-related delays, but none involve the disenfranchisement of UOCAVA voters. *See* Dkt.98 at 4–5. The De Gaudemar Proposed Intervenors are unable to point to any correlation between these domestic incidents and the disenfranchisement of American voters abroad, if New York holds a primary on the same date or earlier than multiple of its sister States. In fact, a 2013 study by the Overseas Vote Foundation, a nonpartisan voting rights organization that supports increasing ballot access for Americans abroad, found that improved access to electronic ballot transmission and overseas voter information under the MOVE Act made the process easier and faster, substantially increasing overseas voter participation. *See* Brian Knowlton, *Internet and Federal Act Ease*



*Overseas U.S. Voting*, N.Y. Times (Jan. 30, 2013).[3]  Moreover, while the De Gaudemar Proposed Intervenors claim, without evidence, that these "errors cause confusion and depress turnout," Dkt.98 at 5, they fail to consider the chaos and confusion that their proposed course would entail, as explained below, see *infra* Part III.

In all, the De Gaudemar Proposed Intervenors falsely claim that it is "virtually impossible" for New York to hold an August primary that complies with UOCAVA, Dkt.98 at 6, but this remains the same grossly unsupported speculation that Judge Kaplan correctly rejected last week. Dkt.92-2 at 34:4–17.  The De Gaudemar Proposed Intervenors have submitted and discussed a letter relating to New York's 2012 election, Dkt.98-2; Dkt.98 at 4, but that is part of "a 10-year-old record" that cannot be probative of 2022, as Judge Kaplan found, Dkt.92-2 at 6, 33–34.  Next, they rely heavily on a New York Senate report calling for election reforms in the State, Dkt.98-1; Dkt.98 at 4–5, but none of the problems identified in the report relate to the State's compliance with UOCAVA or even to issues with military or overseas voters particularly, *see generally* Dkt.98-1.  Relatedly, they cite testimony to the New York Senate Standing Committee on Elections, Dkt.98-3; Dkt. 98 at 5, 7, but that testimony does not discuss the State failing to meet UOCAVA either and focuses on the State's election administration in 2020—a year that, as Judge Kaplan explained, is "not a very useful comparator" for reasons that are well known to everyone.  Dkt.92-2 at 11.  The De Gaudemar Proposed Intervenors have also submitted four near-identical declarations from commissioners of county boards of elections from the State, Dkts.98-4, -5, -6, & -8, but these too do not help them.  Rather, each of these declarants admit that an August 23 primary date would allow the State to mail military and overseas absentee ballots within the 45-day deadline, as UOCAVA requires, but declare that it will be "difficult[ ]" to meet that deadline if delays arise.  *E.g.*, Dkt.98-4 at 2; *accord* Dkt.99-1 (Declaration of overseas military voter expressing similar generalized concerns).  Those "concern[s]," *e.g.*, Dkt.98-4 at 2; Dkt.99-1, however, do not even suggest beyond mere speculation that New York will fail to comply with UOCAVA while holding an August 23 primary, which is why the New York Court of Appeals expressed its "confiden[ce]" that the State could schedule the primary for that date while "compl[ying] with federal voting laws, including the Uniformed and Overseas Citizens Absentee Voting Act," *Harkenrider*, 2022 WL 1236822, at *12.  Finally, the De Gaudemar Proposed Intervenors claim to worry about unlawful delays because "UOCAVA ballots need to be actually physically mailed out to all of New York's overseas and military voters," Dkt.98 at 6, but this is more unsupported speculation that also ignores the option that overseas voters have to receive their ballots electronically, 52 U.S.C. § 20302(a)(6); *see also* N.Y. State, Military And Overseas (Federal Voting Act).[4]

### III. Rejecting The New York Board Of Elections' August 23 Primary Date Would Set Off Sheer Chaos, To The Great Detriment Of All Voters

At the present time, New York has an orderly process to ensure that a constitutional map will govern the 2022 congressional election.  The Steuben County Supreme Court has already permitted all interested parties to submit written and oral presentation on a proposed congressional remedial map; the Special Master will release a preliminary map on May 16, any interested parties could submit comments on the proposed map by May 18, and the Supreme

---

[3] Available at https://www.nytimes.com/2013/01/31/us/politics/internet-and-federal-act-ease-overseas-us-voting.html.

[4] Available at https://www.elections.ny.gov/VotingMilitaryFed.html.

**The Honorable Gary L. Sharpe**
May 9, 2022
Page 7



Court will put a final map in place by May 20, 2022.  Tseytlin Decl., Ex.E at 2.  Allowing the underway process to finish in an orderly fashion will give New York ample time to complete all of the election requirements and processes before its August 23 primary day, including setting the "deadline for military and overseas ballots to be mailed [as] July 8, 2022," Tseytlin Decl., Ex.D at 2, as well as filing designating petitions, N.Y. Elec. Law §§ 6-134, 6-158, certifying primary ballots, *id.* §§ 4-110, 4-114, and all other preliminary deadlines and procedures necessary to run the primary elections successfully.  This schedule will not at all jeopardize New York's elections, as these same, or similar, deadlines are being followed by several of New York's sister States, including Florida.  *See* Fla. Div. of Elections, *supra*.

If this Court enters any order casting doubt on New York's right to hold a primary election on August 23, under the above-described schedule, sheer chaos will ensue.  There will be emergency appeals to the Second Circuit and, if necessary, to the U.S. Supreme Court, under the principles discussed above.  While these appeals race through the federal appellate courts, the Board of Elections would be unsure about the status of the 2022 primary election and would need to scramble to offer both the state court and this Court various options to hold a primary on the map that the New York courts will adopt on May 20, including potentially changing New York's statutory petitioning process.  In the meanwhile, no one—especially New York citizens—will know what will occur with New York's 2022 congressional primary.

This Court should avoid setting off this chaos.  Instead, this Court should simply confirm that its 2012 injunction does not apply to New York's 2022 elections, given that the New York Legislature has reassumed its primary control over the State's election calendar under the 2012 injunction's "resetting" provision.  *Supra* pp. 4–5.  Alternatively, if this Court were to conclude that the 2012 injunction does still apply, it should then grant the Board of Elections' letter motion and modify the 2012 injunction to allow New York to hold its upcoming congressional primary on August 23—thus affording the New York state courts the best opportunity to adopt a constitutional remedial map—as that date fully complies with UOCAVA.  *Supra* pp. 3–4.

Sincerely,

/s/Misha Tseytlin
Misha Tseytlin

CC: All counsel of record (via ECF)